Frederick F. **PORDUM**, Appellant,

v.

**BOARD OF REGENTS OF the STATE OF NEW YORK et al., Appellees.**

No. 279, Docket 73–1842.

United States Court of Appeals,
Second Circuit.

Argued Jan. 10, 1974.

Decided Feb. 20, 1974.

Bernard F. Ashe, Albany, N. Y. (James R. Sandner, and Ivor R. Moskowitz, Albany, N. Y., of counsel), for appellant.

Margery Evans Reifler, Deputy Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of N. Y., Samuel A. Hirshowitz, First Asst. Atty. Gen., of counsel), for appellees.

Before KAUFMAN, Chief Judge, and SMITH and FEINBERG, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal from a decision of the United States District Court, Northern District of New York, James T. Foley, Chief Judge, entered on April 26, 1973, reported at 357 F.Supp. 222, refusing to convene a three-judge court to consider the constitutionality of section 305(7) of the New York Education Law and otherwise dismissing appellant Pordum's complaint. We affirm.

Frederick F. Pordum is a tenured teacher in the Lackawanna, New York school system. He holds a New York State Teaching Certificate issued by the Commissioner of Education of New York State. In 1967, Pordum requested and received a two-year leave of absence from the school district, and this leave

was subsequently extended for an additional three years, to expire on January 1, 1973. In June 1971, while Pordum was a member of the Erie County Legislature, he was convicted in the United States District Court, Western District of New York, of the crime of conspiracy to promote and facilitate the promotion of bribery of public officals, a felony under 18 U.S.C. § 371. He was sentenced to serve three years in prison.

On December 22, 1972, Pordum was released on parole from prison. He wrote to the Lackawanna school system on December 29, stating that his leave of absence was about to expire and that he was ready to resume teaching. By letter dated January 24, 1973, the school district informed appellant that it had assigned him to Wilson Elementary School, effective February 1, 1973, the beginning of the new term.[1]

Also on January 24, the Commissioner of Education wrote to appellant, ordering him to show cause on February 15, 1973, at a hearing why his teaching certificate should not be revoked. The Commissioner stated in the letter that he was acting pursuant to section 305(7), which provides:

He [the Commissioner] may annul upon cause shown to his satisfaction any certificate of qualification granted to a teacher by any authority whatever or declare any diploma issued by a state teachers college and state colleges for teachers ineffective and null as a qualification to teach a common school within this state, and he may reconsider and reverse his action in any such matter.

In a separate letter dated January 24, the Commissioner ordered the Lackawanna school district not to re-employ Pordum pending the outcome of the February 15 hearing. On January 30, the school district informed appellant that he would be notified by the district

---

1. Neither the letter nor the parties specified what grade or subject Pordum was to teach. But it appears from several suggestions in that letter concerning preparation and from the oral argument before Judge Foley that appellant was to be a classroom teacher and not a special duties teacher.

or by the Commissioner if and when he was to report to work.

Appellant has refused to comply with the hearing procedure. At his rquest, the hearing was postponed until March 30, 1973. On March 8, he commenced this action in the United States District Court, naming the Commissioner and the school district as defendants and challenging the constitutionality of section 305(7). The Commissioner remains prepared to go forward with the hearing. The school district, meanwhile, asserts that it is ready and willing to employ Pordum, without a hearing. Although a defendant in this lawsuit, the district joined in appellant's motion below for immediate reinstatement. The district did not appear at oral argument.

Appellant contends that section 305(7) is unconstitutional in that it does not afford due process of law, is fatally vague, violates the equal protection clause, and is overbroad. Judge Foley concluded that these claims were either foreclosed by previous decisions of the Supreme Court or obviously lacking in merit and that therefore a three-judge court need not be convened. Goosby v. Osser, 409 U.S. 512, 518, 93 S.Ct. 854, 35 L.Ed.2d 36 (1973). We agree with this conclusion.

### Due Process

In the Commissioner's letter of January 24 to appellant, appellant was notified that a hearing would be held prior to the Commissioner's ultimate disposition of the teaching certificate, that a hearing officer would preside, that appellant would be allowed to present evidence, cross-examine witnesses and obtain a copy of the transcript of the hearing. At oral argument, the Commissioner stated that judicial review of the Commissioner's determination was available pursuant to Article 78 of the New York Civil Practice Law and Rules. As Judge Foley found, these rights were granted "with an attitude of fairness to insure compliance with due process requirements." 357 F.Supp. at 225. Appellant does not contest these procedures. He challenges only the failure to afford him a hearing prior to his suspension.

The Commissioner characterizes this claim as an argument that Pordum must be *reinstated* as a teacher pending a hearing. Appellant emphasizes the fact that he has been ordered to report as a teacher by the school district and argues that the job cannot be *taken away* from him before a hearing is held. Semantics aside, Pordum's position is this: He must be allowed to teach in Wilson Elementary School until a hearing is held and a decision based on that hearing, concerning his fitness to teach has been made, a matter of three or four weeks. Appellant is not complaining of procrastination by the Commissioner; his position is that the Commissioner cannot keep him out of the classroom for one day pending a hearing.

In evaluating any due process claim, we must begin with the question whether a "liberty" or "property" interest is at stake. The interest of an untenured college teacher in his job was held in Board of Regents v. Roth, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), to be insufficient to invoke the protection of the due process clause. The *Roth* Court emphasized the non-stigmatic nature of a failure to rehire an untenured teacher and the fact that the action did not seriously impede the teacher's ability to secure another teaching position.

▪ Pordum's interest in retaining his certification is materially more substantial than that of the teacher in *Roth*. Pordum is a tenured teacher. Moreover, while it is uncertain whether revocation of his certification will automatically bar him from teaching in the public schools of New York State,[2] such

2. Appellant contends that the Commissioner does not have the power to suspend or dismiss a teacher, only to revoke certification. This contention is questionable. *See* text at notes 10–11. But since a school district which employs a non-certified teacher may not receive state aid, section 3604, it is unlikely that Pordum would be hired by the public school districts of New York if his certification were revoked.

action would amount to an official declaration that he is unfit to teach and might well impede his ability to secure a teaching job, in public or private schools, in New York or in another state. His interest in his certificate is a sufficient property interest to be protected by the due process clause and, indeed, Pordum is being afforded a hearing prior to potential revocation. This does not, however, necessarily require a hearing prior to his temporary suspension.

 An analysis of a due process claim to a prior hearing must start from the proposition that " . . . an individual [must] be given an opportunity for a hearing *before* he is deprived of any significant property interest, except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event." Boddie v. Connecticut, 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) (original emphasis). Governmental interests which have been held sufficient to outweigh the individual's interest in a prior hearing include the cost to the public of using probably useless drugs,[3] the threat to the credit position of a bank,[4] the finding that food was unfit to eat,[5] the national security,[6] the prevention of tax evasion,[7] the possibility of irregular securities dealing,[8] the pendency of charges of misbehavior by police officers,[9] and the threat to the safety of drivers and pedestrians.[10] In each of these cases, the court scrutinized the pertinent competing considerations to determine whether summary administrative action was justified.

Here, the Commissioner asserts the interest of the well-being of the children at Wilson Elementary School. He does so in a conclusory manner, but we presume that this general interest encompasses Pordum's possible corrupting influence, the possibility that the students might not respect Pordum, and the disruption of the educative process which would result if Pordum were removed from the classroom subsequent to the hearing after having taught for several weeks. While the first of these dangers might appear to be improbable, we must remember that teachers serve as models for students and that the minds of elementary school pupils are very impressionable.

Pordum responds by pointing to his bank balance. He argues that he has been unable to provide himself and his family with a "living." But appellant had not been employed as a teacher for five years preceding his suspension and he stands to lose only three or four weeks pay pending the Commissioner's determination (and if he is found fit to teach he may be entitled to back pay under section 3020–a(4)). Moreover, appellant's initial response to notification of the hearing, a request for postponement, and his subsequent actions do not evidence dire need.

In sum, then, the interests of the state are quite significant, while those of ap-

---

3. Ewing v. Mytinger & Casselberry, Inc., 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950) (seizure of drugs).

4. Fahey v. Mallonee, 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947) (seizure of assets).

5. North American Cold Storage Co. v. Chicago, 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908) (seizure of food).

6. Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961) (dismissal of employee).

7. Phillips v. Commissioner of Internal Revenue, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931) ("seizure" of assets).

8. R. A. Holman & Co. v. SEC, 112 U.S.App. D.C. 43, 299 F.2d 127, cert. denied, 370 U.S. 911, 82 S.Ct. 1257, 8 L.Ed.2d 404 (1962) (suspension of dealer).

9. La Bonte v. City of Berlin, 85 N.H. 89, 154 A. 89 (1931) and De Marco v. Board of Chosen Freeholders, 21 N.J. 136, 121 A.2d 396 (1956) (suspension of officers).

10. Thornhill v. Kirkman, 62 So.2d 740 (S. Ct.Fla.1953) (suspension of driver's license).

pellant are not. In this case, it is the students at Wilson Elementary School who have a right to a prior hearing, not appellant.

■ In an attempt to escape this result, appellant contended at oral argument that the Commissioner did not have the authority to suspend him and that the school district, in obeying the unauthorized order of the Commissioner not to employ him, breached independent constitutional and statutory duties owing to appellant. This argument is based on the major premise that the Commissioner has the authority only to revoke and annul Pordum's license, not to suspend him from his teaching duties. The Commissioner in response cited section 308 of the Education Law:

> The commissioner of education shall also have power and it shall be his duty to cause to be instituted such proceedings or processes as may be necessary to properly enforce and give effect to any provision in this chapter or in any other general or special law pertaining to the school system of the state or any part thereof or to any school district or city. He shall possess the power and authority to likewise enforce any rule or direction of the regents.

We need not reach this question of New York law in order to dispose of this argument because appellant's minor premises are incorrect. The constitutional duty the district might owe Pordum is identical to the duty analyzed above. As to the statutory duty, it is embodied in section 3020–a(2):

> . . . Upon receipt of the charges, the clerk of the school district or employing board shall immediately notify said board thereof. Within five days after receipt of charges, the employing board, in exec-

utive session, shall determine, by a vote of a majority of all the members of such board, whether probable cause exists. If such determination is affirmative, a written statement specifying the charges in detail, and outlining his rights under this section, shall be immediately forwarded to the accused employee by certified mail. *The employee may be suspended pending a hearing on the charges and the final determination thereof.* [emphasis added]

Even though the school district did not initiate the suspension, it adopted that action.[11] Pordum was not entitled to any more from the school district than he received.

### *Vagueness*

■ Appellant's vagueness claim must fail because Pordum cannot argue that he was surprised to learn that a felony conviction might bar him from teaching in the public schools of New York State. Section 3020–a of the Education Law, which sets forth the procedure by which a tenured teacher may be dismissed by a school district, states that there is a five-year statute of limitations on charges, "except when the charge is of misconduct constituting a crime when committed." This constitutes some notice that criminal behavior is cause for dismissal. The fact that Pordum is being examined pursuant to section 305(7), by the Commissioner, and not under section 3020–a, by the school district, is immaterial to the question of notice. Moreover, common sense is as helpful to this question as is the Education Law: A teacher is fairly chargeable with the knowledge that conduct which will subject him or her to five years in prison, the maximum under 18 U.S.C. § 371, will also subject that

---

11. This acquiescence may have been motivated by a desire to continue receiving state aid. *See* n. 2, *supra*.

teacher to review concerning fitness to teach.[12]

As applied to the case of a convicted felon, section 305(7) is not impermissibly vague. *Cf.*, *Beilan v. Board of Public Education*, 357 U.S. 399, 406–408, 78 S.Ct. 1317, 2 L.Ed.2d 1414 (1957). This conclusion is sufficient to uphold Judge Foley's determination that appellant's claim was without merit. We are not concerned here with other hypothetical situations. "[O]ne to whom application of a statute is constitutional will not be heard to attack the statute on the ground that impliedly it might also be taken as applying to other persons or other situations in which its application might be unconstitutional." *United States v. Raines*, 362 U.S. 17, 21, 80 S. Ct. 519, 522, 4 L.Ed.2d 524 (1960).

### Equal Protection

Appellant next contends that section 305(7) is unconstitutional in that it is silent with respect to procedural standards and vague in defining misconduct whereas section 6509 of the Education Code, which provides for the regulation of other professions, establishes clear and detailed procedures and defines professional misconduct with precision. This is said to result in a denial of equal protection.

 This argument relies upon an assumption of an equivalence between the teaching profession and the professions regulated by section 6509, which include massage, landscape architecture, and podiatry. But the teaching profession differs from these other professions in many respects, including the special vulnerability of the client population, the high duty of care owed by the state to that group, and the unique responsibility which the state has to provide an effective system of education.[13] These distinctions justify the legislative determination that different treatment with respect to the disciplining of the different professionals is required. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

### Overbreadth

Finally, appellant argues that section 305(7) is overbroad and thereby creates an impermissible chilling effect on First Amendment rights. Pordum, however, has not shown and, when asked, could not say in what respect his First Amendment rights were being chilled. We express no opinion as to the constitutionality of section 305(7) on this ground as applied to others when we conclude, as we must, that appellant's claim has no merit.

In sum, the lack of substance in Pordum's claims of unconstitutionality was sufficiently obvious that Judge Foley "did not need to call on two other judges for reassurance," *Green v. Board of Elections*, 380 F.2d 445, 452 (2d Cir. 1967), cert. denied, 389 U.S. 1048, 88 S. Ct. 768, 19 L.Ed.2d 840 (1968); *Nieves v. Oswald*, 477 F.2d 1109, 1115 (2d Cir. 1973).

### Remaining Issues

Appellant contends that even if the court below was correct in refusing to convene a three-judge court, it should not have dismissed his 42 U.S.C. § 1983

---

12. It is noteworthy that section 6509, which sets forth the definition of "professional misconduct" with respect to disciplinary proceedings for the professions of medicine, physical therapy, massage, dentistry, veterinary medicine, pharmacy, nursing, podiatry, optometry, ophthalmic dispensing, engineering and land surveying, architecture and landscape architecture, public accounting, shorthand reporting, psychology and social work, provides that conviction of a crime under New York or federal law subjects a person to possible dismissal from these professions.

13. The state's duty to educate its citizens is embodied by art. 11, § 1 of the New York State Constitution: "The legislature shall provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated."

claim against appellees for the deprivation of his constitutional rights. Since it is clear that appellant's constitutional rights have not been violated, dismissal was proper.[14]

Affirmed.

14. There may, of course, be serious problems for the Commissioner's consideration. In brief and at oral argument, the Commissioner stated that the sole function of the hearing was to show that Pordum indeed had been convicted of a crime. The Commissioner argued:

> Assuming the right to a hearing, the purpose of the hearing in this case could only be to explore the facts surrounding the commission of the crime and the subsequent rehabilitation (if any) of the convicted felon. . . . This obviously is restricted here by the fact that appellant has not yet completed his sentence, but rather is on probation, so that the fact of the conviction has not receded and rehabilitation is not a recognizable factor. [Commissioner's Brief, at 22].

If the hearing were to proceed in this manner, with the irrebuttable presumption that a person who has been convicted of committing a crime and who is on probation is unfit to teach in the public schools, it might raise serious constitutional difficulties.

Such irrebuttable presumptions are disfavored under the due process clause, Vlandis v. Kline, 412 U.S. 441, 446 [93 S.Ct. 2230, 37 L.Ed.2d 63] (1973), Cleveland Board of Education v. LaFleur, 42 U.S.L.W. 4186, 4190–91 [414 U.S. 632, 94 S.Ct. 791, 39 L. Ed.2d 52] (Jan. 21, 1974), and will be overturned if they are found to be neither "necessarily nor universally true." *LaFleur,* 42 U.S.L.W. at 4190. The Court, however, has upheld the use of a *per se* rule to exclude a class of persons from a certain occupation, but it did so in the context of a rule which was established after a comprehensive investigation into the relationship between the class of persons excluded (those convicted of felonies) and the evil sought to be avoided (corrupt practices by waterfront union officials). DeVeau v. Braisted, 363 U.S. 144 [80 S.Ct. 1146, 4 L.Ed.2d 1109] (1960). Where no such legislative finding is present, exclusion from a profession can be justified only after a detailed and particularistic consideration of the relationship between the person involved and the purpose of exclusion. Schware v. Board of Bar Examiners, 353 U.S. 232 [77 S.Ct. 752, 1 L.Ed.2d 796] (1957).

Moreover, there are factors present here which appear to evidence a need for a close inquiry. Appellant is a tenured teacher, and the school district forcefully asserts its desire to have him teach in Wilson Elementary School. At oral argument before Judge Foley, the school district argued that the children in the class to which appellant was assigned were suffering because they were being taught by a substitute teacher. The Commissioner's view that probationary status is evidence of unfitness to teach is at odds with modern correctional theory. Such thinking bars persons with criminal records from many employment opportunities. *See, generally,* Employment of Former Criminals, 55 Cornell L.Rev. 306, 306–312 (1970), and The Collateral Consequences of Criminal Conviction, 23 Vand.L.Rev. 929, 1001–1018 (1970). These barriers to employment appear to be a major contributor to the high rate of recidivism which plagues society. President's Commission on Law Enforcement and Administration of Justice, Task Force Report: Corrections, 32 (1967). The Task Force found that much of this regulation was unreasonable and explained this finding in this way:

> Most of the disabilities and disqualifications in this area [employment] result from the actions of various administrative agencies, rather than directly from the conviction. . . . Such groups tend to be primarily concerned with advancing the interests of their own members. Thus, when faced with the problem of whether to license persons with criminal records, they may be unduly concerned with the effect on the status of their professions. Further, to the extent they try to consider the public interest, they are likely to have an unrealistic view of the importance of their own profession or occupation and the potential harm to the public that might be done by unfit persons.

*Id.* at 91. While these comments may be more directly relevant to other professions, the message is not entirely inapposite in this case. Finally, it is conceivable that Pordum will be a better teacher for his prison experience. *See, e. g.,* Nordheimer, "Ex Convicts Teach Delinquents Crime Doesn't Pay," *The New York Times,* December 24, 1973, p. 7. "The best teachers, it [a project funded by the Federal Government] is trying to demonstrate, are those who have been through the nation's corrections systems and know what it does to young minds."

However, we do not reach these questions or express any opinion thereon. After a thorough consideration of the matter, the Commissioner may conclude that there is an inevitable relationship between a criminal conviction, or between convictions of a type, and unfitness to teach and therefore deem a particularistic inquiry unnecessary in this case. Such a conclusion would be reviewable and might be found to be warranted. It must of course, be based on more than administrative convenience. *LaFleur,* 42 U.S. L.W. at 4191 [94 S.Ct. 791].