**Kenneth W. SMITH et al., Plaintiffs,**

v.

**Cleveland B. FUSSENICH, Commissioner of State Police, et al., Defendants.**

Civ. No. B–74–472.

United States District Court, D. Connecticut.

Nov. 3, 1977.

there is an individualized determination after a hearing of the felon's fitness for the position. The State, on the other hand, contends that its *per se* rule of exclusion rationally furthers its legitimate interests and that, in any event, the State Board of Pardons does provide a forum for felons to qualify for registration as security guards, watchmen, or private detectives. Jurisdiction of these issues is conferred by 28 U.S.C. §§ 1331, 1343(3) and (4), 2281, and 2284.[3] Since the material facts are not in dispute, both parties move for summary judgment.

Anne M. Hamilton, Fleischmann & Sherbacow, Hartford, Conn., Davis S. Branch, Fairfield County Legal Services, Inc., Bridgeport, Conn., Elizabeth B. DuBois, Eric D. Balber, Legal Action Center of City of New York, Inc., New York City, for plaintiffs.

Carl R. Ajello, Atty. Gen., Frank Rogers, Asst. Atty. Gen., Meriden, Conn., for defendants.

Before TIMBERS, Circuit Judge, ZAMPANO and NEWMAN, District Judges.

## MEMORANDUM OF DECISION

### ZAMPANO, District Judge:

This case, brought pursuant to the provisions of 42 U.S.C. § 1983, presents the issue of the constitutionality of § 29–156a(c) of the Connecticut General Statutes which bars felony offenders from employment with licensed private detective and security guard agencies.[1] The plaintiff and the class he represents[2] argue that the statute is invalid both on equal protection and on due process grounds, and that the State cannot deny licensure to a felon unless

### I

Under Connecticut law, Conn.Gen.Stat. § 29–153 *et seq.*, all private investigators and security guards must be licensed by and registered with the Public Safety Section of the Department of State Police (hereinafter "Department"). Currently there are 147 private investigation and security guard agencies in Connecticut, with over 9,000 employees. Private detectives gather evidence in civil and criminal matters, make background checks in employment cases, and perform general investigative functions. The duties of security guards include patrolling and guarding stores, shopping malls, schools, commercial buildings and industrial sites. In crowd control situations they act as uniformed deterrents. Neither the private investigators nor the security guards possess arrest powers. They may carry firearms only if they are authorized to do so by a special permit procedure which applies to all private citizens.

Under the registration scheme, there is an automatic disqualification of any applicant who has been convicted of a felony. In 1974 alone, there were 103 rejections for registration by the Department of persons

1. Conn.Gen.Stat. § 29–156a(c) reads in pertinent part: "No person shall be approved for employment [with a licensed private detective or security guard agency] who has been convicted of a felony or any crime involving moral turpitude that would tend to question his honesty and integrity . . . ."

2. The Court grants plaintiff's motion to maintain this action on behalf of "all persons who

have been or will be denied registration as employees of private detective or private guard agencies, or have or will be deterred from applying for such registration, due to the operation and enforcement of Conn.Gen.Stat. § 29–156a(c)." Fed.R.Civ.P. 23(b)(2) and (3).

3. The plaintiff's motion to convene a three-judge court was granted on August 13, 1975.

who had prior felony records. However, a misdemeanant or a person who has a history of alcoholism or drug abuse may be eligible for licensure if the Department deems the applicant fit under relevant criteria such as the nature and extent of the criminal behavior, progress made through rehabilitative treatment, and so forth. The record also discloses that licensure is not required by the Department with respect to numerous occupations in which services are rendered similar to those performed by private detectives and security guards. These include: (a) watchmen employed directly by retail establishments and factories, (b) security guards in buildings owned or leased by State or local governments; (c) investigators assigned to the Connecticut Department of Social Services; and (d) attorneys conducting civil or criminal investigations.

The named plaintiff in the instant case, Kenneth Smith, is a 26 year old white male who was accepted for employment by the Licensee Prudent Investigation Services of Bridgeport, Connecticut. When his application for a license as a security guard was rejected by the Department due to his felony conviction record, this action was instituted.[4]

## II

■ The main issue before the Court is plaintiff's contention that the statute in question is violative of his rights under the Equal Protection Clause of the Fourteenth Amendment.[5] In applying equal protection analysis, strict scrutiny of a legislative classification is required only when the statute operates to the particular disadvantage of a suspect class, e. g., *Graham v. Richardson*, 403 U.S. 365, 91 S.Ct. 1848, 29 L.Ed.2d 534 (1971) (alienage); *Loving v. Virginia*, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967) (race); *Oyama v. California*, 332 U.S. 633, 68 S.Ct. 269, 92 L.Ed.2d 249 (1948) (national origin), or when it impermissibly interferes with the exercise of a fundamental right, e. g., *Kramer v. Union Free School District*, 395 U.S. 621, 89 S.Ct. 1886, 23 L.Ed.2d 583 (1969) (vote); *Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (travel).

■ Although the right to hold specific employment is a vital and constitutionally protected one, *Willner v. Committee On Character*, 373 U.S. 96, 102, 83 S.Ct. 1175, 10 L.Ed.2d 224 (1963); *Greene v. McElroy*, 360 U.S. 474, 492, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959), the Supreme Court has emphasized that a standard less than strict scrutiny "has consistently been applied to state legislation restricting the availability of employment opportunities." *Dandridge v. Williams*, 397 U.S. 471, 485, 90 S.Ct. 1153, 1162, 25 L.Ed.2d 491 (1970); see also *Massachusetts Bd. Of Retirement v. Murgia*, 427

---

**4.** During the course of this litigation, Intervenor, Ronald Simes, who had been denied licensure based on a prior conviction, received a pardon on November 10, 1975. Subsequently, his prior record was expunged and he was registered by the Department on December 23, 1975.

**5.** We believe this case is best decided on constitutional rather than statutory grounds. With deference, we disagree with Judge Newman's narrow construction of Conn.Gen.Stat. § 4–61p as set forth in his concurring opinion. Section 4–61*o* provides that, before a person with a criminal record can be denied employment by the State or be disqualified to engage in a business that requires state registration or licensure, there must be an individualized assessment of that person's fitness according to certain specified criteria. Automatic disqualification due to a prior criminal conviction is proscribed. However, the legislation is inapplicable to "any law enforcement agency" unless such agency voluntarily adopts the provisions of the act. Conn.Gen.Stat. § 4–61p.

We read this exception to apply to the Department of State Police, as one such law enforcement agency, in its registration and licensing procedures as well as in its hiring practices. The Commissioner of the Department so interpreted the enactment at the time the General Assembly was considering its passage and, as a consequence, the exception has been extended in practice over the years to the registration and licensure policies affecting the employment of private detectives and security guards. We are further reinforced in our interpretation of the exception by the stipulation entered into between the Attorney General and plaintiff's counsel that existing law automatically bars felony offenders from engaging in the occupations of private detectives and security guards. Amended Stipulation of Facts, par. 8.

U.S. 307, 314, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976). Thus, courts have refused to apply the "strict scrutiny" standard to classifications based on criminal record. *Upshaw v. McNamara*, 435 F.2d 1188, 1190 (1 Cir. 1970); *Butts v. Nichols*, 381 F.Supp. 573, 578–579 (S.D.Iowa 1974). This Court, therefore, will examine the constitutionality of Section 29–156a(c) in the light of the rational basis test.

The relevant inquiry under the rationality standard of review is "whether the challenged state action rationally furthers a legitimate state purpose or interest." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973); see also *Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920). In the particular context of occupational licensing, the Supreme Court has formulated a test which requires that "any qualification must have a rational connection with the applicant's fitness or capacity" to perform the job. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957).

### III

■ The defendants first contend that the statute's across-the-board disqualification of felons as security guards and private detectives is rationally related to the legitimate interest of the State in preventing "the criminal element from a business that affects public welfare, morals and safety." In essence, the defendants argue there is an irrebuttable presumption that convicted felons cannot be relied on to exercise traits of honesty, fidelity, integrity and obedience to the law in the performance of their duties as guards and investigators.

■ For several reasons this justification is unacceptable. While we agree that the State may and should prohibit individuals of bad character from employment as private detectives and security guards, e. g., *Lehon v. City of Atlanta*, 242 U.S. 53, 37 S.Ct. 70, 61 L.Ed. 145 (1916); *Norwood v. Ward*, 46 F.2d 312 (S.D.N.Y.1930) (three-judge court), aff'd mem., 283 U.S. 800, 51 S.Ct. 494, 75 L.Ed.2d 1422 (1931), the validi-ty of the goal of the statute is not under challenge in this lawsuit. Rather, we are asked to determine whether the method used to achieve that goal is constitutionally defensible. We hold that it is not.

The critical defect in the blanket exclusionary rule here is its overbreadth. The statute is simply not constitutionally tailored to promote the State's interest in eliminating corruption in certain designated occupations. The legislation fails to recognize the obvious differences in the fitness and character of those persons with felony records. Felony crimes such as bigamy and income tax evasion have virtually no relevance to an individual's performance as a private detective or security guard. In addition, the enactment makes an irrational distinction between those convicted of felonies and those convicted of misdemeanors. Hence, a person is eligible for licensure even though he was convicted of a crime (larceny, false entry, inciting to riot and riot) which may demonstrate his lack of fitness merely because that crime is classified as a misdemeanor under the Connecticut code. Cf. *Butts v. Nichols*, supra at 580.

Moreover, the statute's across-the-board disqualification fails to consider probable and realistic circumstances in a felon's life, including the likelihood of rehabilitation, age at the time of conviction, and other mitigating circumstances related to the nature of the crime and degree of participation. We believe it is fair to assume that many qualified ex-felons are being deprived of employment due to the broad sweep of the statute. Finally, the irrationality of the enactment becomes most pronounced when it is compared with another Connecticut statute, Conn.Gen.Stat. § 4–61o which prohibits state agencies (other than law enforcement departments) from rejecting applications for licenses "solely because of a prior conviction of a crime." As a result, for example, there is no automatic exclusions of felons from the practice of law or medicine. These professions certainly have a greater attachment to the public welfare than the positions of private investigators and security guards which require little skill and responsibility.

In reaching our conclusion that the statute violates equal protection, we have not overlooked the decisions of the Supreme Court in *DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960) and *Hawker v. New York*, 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898). In *DeVeau*, the Supreme Court upheld the absolute disqualification of felons from office in waterfront labor organizations. However, in that case state and federal legislatures had uncovered "a notoriously serious situation [which needed] drastic reform" and had found "impressive if mortifying evidence that the presence on the waterfront of ex-convicts was an important contributing factor to the corrupt waterfront situation." *Ibid* at 147, 159–160, 80 S.Ct. at 1148, 1154. In the instant case, the defendants have presented no evidence that prior to the passage of the statute the Connecticut legislature conducted an investigation which revealed that criminality was a serious problem in the regulated occupations or that felons as a class would undoubtedly corrupt these otherwise pure businesses.

*Hawker* is heavily relied on by the defendants in support of their argument that a violation of law may be accepted as conclusive evidence of bad character. While language in that case may lend weight to the defendants' position, the case is distinguishable on the ground that the critical issue under consideration there was whether a law forbidding felons from medical practice violated the *ex post facto* clause of the Constitution, Article I § 10, when applied to a doctor convicted before the statute was enacted. Moreover, as pointed out in *Harris v. Kentucky Board of Barbering*, No. C–74–399L(A) at 6 (W.D.Ky. June 13, 1975), recent developments in the law indicate that *Hawker* "no longer has vitality."

IV

Since we find that § 29–156a(c) offends equal protection because it is insufficiently related to the articulated purpose of the enactment, it is not necessary to consider plaintiff's further suggestion that the statute is invalid under due process. However, we deem it appropriate to mention that the statute's irrebuttable presumption may well be impermissible as a violation of the Due Process Clause of the Fourteenth Amendment. In *Pordum v. Board of Regents of State of New York*, 491 F.2d 1281 (2 Cir.), cert. denied, 419 U.S. 843, 95 S.Ct. 74, 42 L.Ed.2d 71 (1974), the Second Circuit ruled that a tenured teacher, who had been suspended from employment due to a felony conviction, was not entitled to continue teaching pending a hearing concerning his fitness. The Court of Appeals, in commenting on the claim that the sole function of the post-suspension hearing would be to show that Pordum had indeed been convicted of a crime, stated in part at 1287 n. 14:

> If the hearing were to proceed in this manner, with the irrebuttable presumption that a person who has been convicted of committing a crime and who is on probation is unfit to teach in the public schools, it might raise serious constitutional difficulties.

Such irrebuttable presumptions are disfavored under the due process clause, *Vlandis v. Kline*, 412 U.S. 441, 446, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1973), *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (Jan. 21, 1974) and will be overturned if they are found to be neither "necessarily nor universally true." *LaFleur*, [414 U.S. 632, 94 S.Ct. 791]. The Court, however, has upheld the use of a *per se* rule to exclude a class of persons from a certain occupation, but it did so in the context of a rule which was established after a comprehensive investigation into the relationship between the class of persons excluded (those convicted of felonies) and the evil sought to be avoided (corrupt practices by waterfront union officials). *DeVeau v. Braisted*, 363 U.S. 144, 80 S.Ct. 1146, 4 L.Ed.2d 1109 (1960). Where no such legislative finding is present, exclusion from a profession can be justified only after a detailed and particularistic consideration of the relationship between the person involved and the purpose of exclusion. *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957).

See also, *Cleveland Board of Education v. LaFleur*, 414 U.S. 632, 644, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974); *Stanley v. Illinois*, 405 U.S. 645, 656–657, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); *Crawford v. Cushman*, 531 F.2d 1114 (2 Cir. 1976); *Thompson v. Gallagher*, 489 F.2d 443, 448 (5 Cir. 1973).

## V

■ Finally, we consider the defendant's alternative contention that any constitutional infirmity apparent on the face of § 29–156a(c) is cured by the opportunity afforded a felon to obtain a pardon under the procedures set forth in Conn.Gen.Stat. §§ 18–26(c), 54–90 as amended by Public Acts 74–163 and 74–183 (1974).[6] The argument is that, since the Department cannot disqualify an applicant for registration due to a felony conviction record which has been expunged through the pardoning process, the plaintiff and the members of his class do have available to them the individualized determination of fitness which they seek in this lawsuit. All they have to do is request a pardon under the applicable statutes. We find this argument unpersuasive.

There is nothing in the record before us, nor in matter of which we may properly take judicial notice, to indicate that the legislature intended the Board of Pardons to function in any capacity as a licensing authority. All relevant factors point to the conclusion that the Board should not be considered to be part of a licensing process. Traditionally the discretionary power to pardon is a peculiar right of the executive branch of government, the exercise of which is not subject to judicial review. See, e. g., *Beacham v. Braterman*, 300 F.Supp. 182, 184 (S.D.Fla.) (three-judge court), aff'd 396 U.S. 12, 90 S.Ct. 153, 24 L.Ed.2d 11

(1969). No rules or regulations govern the Board's activities, nor are reasons advanced for its decisions.

Moreover, the plaintiff's class consists of all felons affected by § 29–156a(c), not just persons with felony convictions received in Connecticut. Because the Board has no power to grant pardons for federal or out-of-state offenses, it must be assumed that a significant part of the plaintiff's class would remain without a remedy if their only recourse was to the Connecticut Board of Pardons. Finally, we have no reason to infer either that the members of the Board possess greater expertise than the members of the Department in the determination of the fitness of a felon to be employed as a private detective or security guard, or that the administrative burden involved in such determination would be greater for the Department than the Board.

## VI

■ Accordingly, the plaintiff's motion for summary judgment is granted; the defendants' motion for summary judgment is denied. Judgment shall enter declaring Conn.Gen.Stat. § 29–156a(c) unconstitutional and an injunction may issue, prohibiting its enforcement against plaintiff and the members of his class.[7]

NEWMAN, District Judge (concurring in the result):

I agree that plaintiff cannot be summarily denied registration and thereby employment as a private detective solely because of his prior felony conviction. However, I find it unnecessary to consider the constitutional issue decided by the Court because I believe the pertinent state statutes should

---

6. In Connecticut, the Board of Pardons consists of five members appointed by the governor with the advice and consent of either House of the General Assembly. The Board has no office nor does it have a telephone listing. It does not have written materials to acquaint the public with its powers or procedures. While an applicant for a pardon may be represented by an attorney and present witnesses, there are no published guidelines or standards limiting or governing the Board's discretion. Pardons are

granted or denied without written or oral explanations. If a person receives an absolute pardon, he may have his criminal record erased by applying to the Court where the conviction occurred.

7. The judgment, of course, does not limit the power of the State to enact reasonable standards and procedures to assess a felon's fitness or capacity to be registered as a private detective or security guard.

be construed to entitle plaintiff to the hearing he seeks.

Connecticut's scheme for regulating the occupations of private detective and security guard involves two concepts: licensure and registration. No person can engage in the business of (a) a private detective or investigator, or (b) a watchman, guard or patrol service without a license from the Commissioner of State Police. Conn.Gen. Stat. § 29–153. No person can work as an employee of those in business in these fields without registering for such employment with the Commissioner of State Police. Conn.Gen.Stat. § 29–156a. Licenses will not be given to any person convicted of a felony, Conn.Gen.Stat. § 29–154a, nor can any felon be registered for employment as a private detective or security guard. Conn. Gen.Stat. § 29–156a(c).

In 1973, however, the Connecticut General Assembly enacted broad legislation substantially restricting the extent to which a felony conviction can be used as an automatic barrier to employment. Conn.Pub. Acts 73–347. Having made a legislative finding that "the public is best protected when criminal offenders are rehabilitated and returned to society prepared to take their places as productive citizens and that the ability of returned offenders to find meaningful employment is directly related to their normal functioning in the community," the legislature announced that it is "the policy of this state to encourage all employers to give favorable consideration to providing jobs to qualified individuals, including those who may have criminal conviction records." Conn.Gen.Stat. § 4–61n. This policy is implemented by a prohibition against disqualifying any person from employment by the State or its agencies or from pursuing any occupation for which state licensure or registration is required solely because of a prior criminal conviction, unless it is specifically determined that the applicant is unsuitable after an individualized consideration. This assessment must include (1) the nature of the crime and its relation to the position sought, (2) the extent of rehabilitation, and (3) the time elapsed since the conviction or release from confinement. Conn.Gen.Stat. § 4–61o. This statute applies "[n]otwithstanding any other provisions of law to the contrary." *Ibid.* However, another provision of the 1973 legislation renders the act inapplicable "to any law enforcement agency," although such an agency may adopt the new restrictive policy voluntarily. Conn.Gen.Stat. § 4–61p.

Thus, under § 4–61p, the State Police, as a law enforcement agency, is exempt from the provisions of § 4–61o and can continue to bar all felons from employment with that agency. The statutory issue in this case, however, is whether the law enforcement agency exception of § 4–61p exempts the State Police from the procedures of § 4–61o not only in its own employment decisions, but also in its licensing and registration decisions as well.

The legislative history sheds little light on the scope of the law enforcement agency exception. The floor debates do not consider the issue. See Connecticut General Assembly Proceedings 1973, House Vol. 16, Part 11, pp. 5464–65; *id.* Senate Vol. 16, Part 5, pp. 2272–73. The record of the Hearings of the Joint Standing Committee on Human Rights & Opportunities, 1973, contains a letter dated March 13, 1973, from the State Police Commissioner to the committee. *Id.* at 164. In that letter the Commissioner expressed his understanding that the exception applies to hiring by the State Police. He goes on to request that the exception should also "extend" to licenses and permits issued by the department and he specifically refers to private detectives. That language standing alone might suggest that the Commissioner thought that the exception, as written, did not include licensing and registration. The Commissioner went on to say, however, that "[i]f this bill does except the State Police Department in all these areas, we would have no further comment concerning this." It is evident, therefore, that the Commissioner himself was unsure whether or not the exception included licensure and registration. His letter to the committee alerted the legislators to the ambiguity, but they failed to

resolve it. Thus the issue of statutory construction is left for judicial interpretation, with scant legislative guidance.[1]

I think the statute should be narrowly construed to exempt State Police hiring but not licensing and registration. Though the statute exempts "any law enforcement agency" without specification of agency functions, there are several considerations that point toward a narrow reading exempting only the State Police hiring function. In the first place, the legislature emphatically expressed a broad policy against absolute barriers to employment based on prior felony records. The exception to this policy should be narrowly construed to provide the minimum departure from the legislature's rehabilitative objective. Secondly, whatever the public interest in absolute disqualification of felons from employment, that interest is less substantial when the employer is a private detective or private security guard agency than when it is the State Police Department or other State law enforcement agency. Third, reading the exception broadly to include State Police licensure and registration would create anomalies unlikely to have been intended by the legislature. For example, under a broad reading of the exception, a felon would be automatically disqualified from serving as a night watchman for a licensed private agency supplying contract service to a state agency operating sensitive facilities such as the National Guard Armory or Bradley International Airport, but would be eligible for employment if the departments operating these facilities chose to hire him directly. It would also mean that a convicted bigamist would automatically be barred from night watchman employment with a licensed private guard agency, but a convicted embezzler could not automatically be barred from employment as a licensed real estate broker. I doubt that the legislature intended such results. Finally, a broad reading of the law enforcement agency exception would encounter the substantial constitutional objections that a majority of

this Court has considered and found to be well taken. *Cf. Pordum v. Board of Regents of State of New York*, 491 F.2d 1281 (2d Cir.), *cert. denied*, 419 U.S. 843, 95 S.Ct. 74, 42 L.Ed.2d 71 (1974). Even if some legislators were willing to permit such bizarre results, the statute should make such intention unmistakably clear before a court is called upon to adjudicate its constitutionality. Neither the subsequent practice of the State Police nor the acquiescence of the State Attorney General's office in this suit persuades me that the legislature should be relieved of the obligation to make plain the broad authority asserted by the defendant.

For all these reasons, I conclude that § 4–61p exempts only State Police hiring from the prohibition of § 4–61o, leaving State Police licensing and registration subject to the procedural safeguards of the latter provision, and that the automatic disqualification provisions of § 29–156a have been modified by the procedural provisions of § 4–61o. I therefore concur in the result that the plaintiff is entitled to have his application for registration considered pursuant to § 4–61o.

---

1. Abstention might be appropriate to permit the plaintiff to seek a state court construction of the statute that would avoid the constitutional issue. However, I think it appropriate to

resolve the statutory issue now to avoid further delay, especially in the absence of any request by the defendant to defer consideration pending a state court determination.