Larry SCHANUEL, individually, and on behalf of all others similarly situated, Plaintiff,

v.

Joan ANDERSON, et al., Defendants.

Civ. No. 78–4345.

United States District Court, S. D. Illinois.

Sept. 9, 1982.

---

**520**

Jack Ver Steegh, Land of Lincoln Legal Asst., East St. Louis, Ill. for plaintiff.

George M. Schafer, Asst. Atty. Gen., Springfield, Ill., for defendants.

## ORDER

FOREMAN, Chief Judge:

Currently before the Court are Cross Motions for Summary Judgment filed by plaintiff on November 6, 1980, and by defendant on January 12, 1981.

The standards applicable to a motion for summary judgment under Federal Rule of Civil Procedure 56 are well established. The purpose of summary judgment is to prevent an unnecessary trial where, on the basis of the pleadings and supporting documents, there remains no material issue of fact to be tried. *Kirk v. Home Indemnity Co.*, 431 F.2d 554, 559 (7th Cir. 1970). Summary judgment is appropriate only if it appears that there is·no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fitzsimmons.v. Best*, 528 F.2d 692, 694

(7th Cir. 1976); Fed.R.Civ.P. 56(c). The burden is upon the moving party to show that there is no issue of material fact in dispute. *Rose v. Bridgeport Brass Co.*, 487 F.2d 804, 808 (7th Cir. 1973), and all doubts as to the existence of an issue of material fact must be resolved against the movant. *Moutoux v. Gulling Auto Electric, Inc.*, 295 F.2d 573, 577 (7th Cir. 1961). In passing on a motion for summary judgment, the trial court may only determine whether or not there exists a dispute as to a material issue of fact. It is not permitted to resolve that dispute. *Carter v. Williams*, 361 F.2d 189, 194 (7th Cir. 1966).

The facts of the case are simple and undisputed and established for purposes of this motion. They are as follows:

1. Plaintiff Larry Schanuel applied for a position as a security guard or investigator with the Allied National Detective Agency, Inc., in Belleville, Illinois, in July 1978.

2. The manager of the Allied National Detective Agency informed plaintiff that under Chapter 111, paragraph 2622 of the Illinois Revised Statutes, plaintiff was ineligible for employment with any detective agency and refused to hire him.

3. Plaintiff in fact had a record of criminal felony conviction which included a plea of guilty to Second Degree Robbery in California on April 18, 1963, and a plea of guilty to a federal charge of Transferring Government Obligations on July 25, 1967. The parole periods for these offenses expired on or about September 1972.

4. Rich Yale, the President of Allied National Detective Agency could not say whether plaintiff would have been hired or performed satisfactorily but for his convictions, but it was his opinion that an individual with a criminal record could perform satisfactorily as an unarmed security guard.

5. Plaintiff has not applied for a detective certificate with the Department of Registration and Education.

6. Defendant Joan Anderson is the Director of the Illinois Department of Registration and Education. Her office is created by Illinois Revised Statutes chapter 127, paragraph 4, and she, together with the Department of Registration and Education, is vested with the sole authority to supervise and regulate detective agencies within the State of Illinois.

## LAW

Plaintiff filed this class action suit against defendant Anderson in her capacity as Director of the Illinois Department of Registration and Education, alleging that defendant has acted under color of state law to deprive plaintiff and the class he represents of rights secured by the Fifth, Eighth and Fourteenth Amendments to the United States Constitution, all in violation of 42 U.S.C. § 1983. Plaintiff alleges that Illinois Revised Statutes, chapter 111, paragraph 2622 violates the Due Process and Equal Protection Clauses of the Fourteenth Amendment. He seeks to bar enforcement of paragraph 2622 and a declaratory judgment that the statute is unconstitutional on its face. The issues as framed by the Motion for Summary Judgment are (1) whether Illinois Revised Statutes, chapter 111, paragraph 2601, *et seq.* meets the Due Process Clause of the Fourteenth Amendment and (2) whether the classifications established by the same statute violate the Equal Protection Clause of the same Amendment.

The relevant statute provides:

The holder of a certificate of authority may employ, to assist him in the work of private detective and in the conduct of such business, as many unlicensed persons as may be necessary, pursuant to the following provisions:

(1) No person may be employed by the holder of a certificate of authority as an armed guard or investigator if he is under 21 years of age, or as an unarmed guard if he is under 18 years of age, is not a citizen of the United States, has been convicted in this or another State of any crime which is a felony in this State, has been convicted of a felony under the laws of the United States, has been convicted in this or another State or under the laws of the United States of any crime involving moral turpitude or has

had a certificate denied, suspended or revoked under this Act. However, if a person has been convicted of a felony or a crime involving moral turpitude and 10 years shall have expired from the time of discharge from any sentence imposed therefor without the person being convicted of any crime except minor traffic offenses he shall be eligible to be employed by a holder of a certificate of authority.

*Ill.Rev.Stat.*, ch. 111, para. 2622 (1980). The note preceding *Ill.Rev.Stat.*, ch. 111, paras. 2601 to 2639, titled "An Act to provide for Licensing and Regulating Detectives and Detective Agencies, and to safeguard the interest of the public," provides:

## DETECTIVE AND INVESTIGATORS

### Deferred Repeal

Section 4.2 of P.A. 8–999, the Regulatory Agency Sunset Act (ch. 127, para. 1904.2) provides for the repeal of "An Act to provide for Licensing and Regulating Detectives and Detective Agencies and to safeguard the interest of the public" (paras. 2601 to 2639 of this chapter) on October 1, 1983, unless, under section 4 of P.A. 81–999 (ch. 127, para. 1904) the General Assembly enacts legislation providing for its continuation.

Note, *Ill.Rev.Stat.*, ch. 111, para. 2601 *et seq.*, pocket part (1981). Thus, unless the General Assembly provides otherwise, the contested provisions, *inter alia*, are destined to expire.

I. Turning to the merits of plaintiffs' motion, they argue that paragraph 2622 violates the Due Process Clause since: (1) it creates an irrebuttable presumption that ex-offenders are unfit for employment as security guards; (2) there is no rational connection between the proscription and the qualities needed for employment as a § 10b license holder's employee; and (3) it denies a § 10b applicant the right to a meaningful hearing.

■ A. Plaintiff uses the oft-cited *Cleveland Board of Education v. Lafleur*, 414 U.S. 632, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) to support the irrebuttable presumption argument. In *Lafleur*, the Supreme Court ruled unconstitutional rules which required pregnant teachers to leave after their fifth month of pregnancy with no guarantee of reemployment after childbirth. The essential ingredients of the decision were the fact that the decision to bear a child is protected by the Due Process Clause as a matter of personal choice in marriage and family life, *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973); the lack of a rational connection between the reasons offered and the goal desired by the state, and the availability of the alternative of individualized determination. The lynchpin in the analysis is Due Process Clause protection of the activity upon which the governmental regulation infringes. In *Lafleur*, the activity was childbearing. Presumably, the Court still regards "the right to work for a living in the common occupations of the community," *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915), as falling within Fourteenth Amendment protection. Yet, in this Court's opinion, the irrebuttable presumption doctrine is no longer available to protect that interest.

In its heyday, the limitless potential of the irrebuttable presumption doctrine to require the government to make individualized decisions on matters affecting a wide range of interests was pointed out only in dissent. *See, Vlandis v. Kline*, 412 U.S. 441, 93 S.Ct. 2230, 37 L.Ed.2d 63 (1974); *Lafleur, supra*. Soon, the magnitude of the potential became apparent to majorities, as well as dissenters. Thus, in *Trafelet v. Thompson*, 594 F.2d 623 (7th Cir. 1979), the Seventh Circuit stated forcefully its doubts regarding the continuing validity of the doctrine and refused to apply it to the challenged statute, based upon the Supreme Court's failure to use the doctrine in the mandatory retirement cases. *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); *Vance v. Bradley*, 440 U.S. 93, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979).

The very dangers feared by critics of the irrebuttable presumption doctrine of possible invalidation of all employment related legislation without any principled reasons for distinguishing between one situation and another are present in this case. For example, under section 2622(1), in addition to the contested requirement, an employee of a certificate holder must be 21 if he will be armed or 18 if unarmed, a citizen of the United States, and never have been denied or had revoked a certificate under this Act. In addition, if the employee is to carry a weapon, he must have at least 30 hours of training under state supervision. (Section 2622(11)). Since each requirement stands between a potential employee of a certificate holder and the job, just as the contested requirement does, each one is subject to constitutional challenge.

Accordingly, the Court declines to invoke the irrebuttable presumption doctrine in the case at bar.

■ B. With respect to the second argument, the Court disagrees with plaintiff that there is no rational relationship between the goals of the legislation and the means employed to achieve it. It is true, as plaintiff states, that in the field of professional licensing, qualifying tests and qualifications standards must bear a logical or rational relationship to the skills necessary for the job. *Thompson v. Schmidt*, 601 F.2d 305 (7th Cir. 1979). "The Due Process Clause prohibits only those classifications ... that are patently arbitrary and totally lacking in rational justification ... And ... 'regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process.' " (Citations omitted.) *Rasulis v. Weinberger*, 502 F.2d 1006, 1010 (7th Cir. 1974). "The Due Process Clause imposes only broad limits, ... on the exercise by a State of its authority to regulate its economic life, and particularly, the conduct of its professions." *Thompson, supra*, 601 F.2d at 308–09, *citing Friedman v. Rogers*, 440 U.S. 1, 18–19, 99 S.Ct. 887, 898–99, 59 L.Ed.2d 100 (1979). It seems patently obvious that the State could conclude rationally that someone who has chosen to violate the laws of the federal or state government within the previous ten years has demonstrated himself unfit for a potentially sensitive position, armed or unarmed, working with a detective agency. Unlike membership in an unpopular political party, violation of valid criminal law is an action which the community is justified in regarding as abhorrent. Otherwise, there would be no justification for punishment in the first place. Moreover, the defendant in this case, to comport with the Constitution, is not required to set up a secondary parole board to engage in the often elusive determination whether an individual is "rehabilitated" or of a moral character of sufficient quality to escape the prohibition of the statute. The question is not "how far should the state have gone" but rather "has the state acted rationally." In short, it is rational to conclude that a person convicted of a felony would be less reliable in a sensitive position in a detective agency than a person without a felony conviction.

■ C. Third, there is here no unconstitutional denial of a right to a hearing. Plaintiff's brief reads as if any citizen deprived of an opportunity to engage in the "common occupations" of life for any reason is entitled to a hearing to demonstrate his qualifications. In fact, this argument presupposes a meritorious claim on either of the two foregoing due process arguments. The Court has found neither to have any merit. Since a due process hearing is mandated only if an individual has a property or liberty interest in the subject of the dispute, and here the plaintiff has neither, he has not been deprived of due process for lack of a hearing.

II. Plaintiff argues further that section 2622 violates the Equal Protection Clause in two respects: (1) the statute irrationally bars ex-felons from employment, and (2) the statute irrationally distinguishes among the class of ex-offenders.

■ A. In the plaintiff's first argument he asserts that section 2622 is an unconstitutional means for the state to promote a reliable workforce in positions that involve

exposure to the public. Because of the absence in this case of an insular and discreet minority or a fundamental right the appropriate test to apply to this statute is "whether the challenged state action rationally furthers a legitimate state purpose or interest." *San Antonio School District v. Rodriguez*, 411 U.S. 1, 55, 93 S.Ct. 1278, 1308, 36 L.Ed.2d 16 (1973). With respect to occupational licensing, "any qualification must have a rational connection with the applicant's fitness or capacity" to perform the job. *Schware v. Bd. of Bar Examiners*, 353 U.S. 232, 239, 77 S.Ct. 752, 756, 1 L.Ed.2d 796 (1957). Therefore, in order to prevail plaintiff must demonstrate there is no rational relationship between a ten year suspension from eligibility for employment with a licensed private detective and the state's interest in a competent and reliable workforce in the sensitive field of detective work. This is a very heavy burden, as the Supreme Court has said referring to the rational basis test:

> In an equal protection case of this type . . . those challenging the legislative judgment must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the government decisionmaker.

*Vance v. Bradley*, 440 U.S. 93, 111, 99 S.Ct. 939, 949, 59 L.Ed.2d 171 (1979).

▪ With respect to his argument plaintiff relies on *Butts v. Nichols*, 381 F.Supp. 573 (S.D.Iowa 1974) and *Smith v. Fussenich*, 440 F.Supp. 1077 (D.Conn.1977). *Smith* in-volved a statutory scheme similar to the Illinois statute which denied ex-felons employment with a licensed private detective or security guard agency. Applying a rational basis test to the statute the court invalidated the statute due to the "critical defect" of "overbreadth." 440 F.Supp. at 1080. In *Butts*, an Iowa federal district court faced a challenge to a statute excluding ex-felons from all civil service employment. The court concluded that the statute violated the Equal Protection Clause since (1) there existed insufficient relation between the class defined and the articulated purposes and (2) the two groups of municipal jobs delineated in the statute were wholly unrelated to the purpose of insulating felons from positions where they might be able to harm the public. 381 F.Supp. at 581.

Both *Smith* and *Butts* are factually distinguishable from the instant case. In *Smith* the statutory scheme completely denied ex-felons from ever being eligible for employment with a licensed private detective or security guard agency. In *Butts* the court was confronted with an across the board ban of civil service employment to ex-felons. Thus, on its face section 2622, by restoring eligibility to ex-felons after ten years, is more closely tailored to the state's legitimate interest.

More significantly the legal analysis of *Smith* and *Butts* is suspect, particularly in light of recent authority. In both cases, the critical defect in the statute was that it was overbroad.[1] This overbreadth analysis

---

1. In *Smith* the court gave the following rationale for invalidating the statute.

   The critical defect in the blanket exclusionary rule here is its overbreadth. The statute is simply not constitutionally tailored to promote the State's interest in eliminating corruption in certain designated occupations. The legislation fails to recognize the obvious differences in the fitness and character of those persons with felony records. Felony crimes such as bigamy and income tax evasion have virtually no relevance to an individual's performance as a private detective or security guard. In addition, the enactment makes an irrational distinction between those convicted of felonies and those convicted of misdemeanors. Hence, a person is eligible for licensure even though he was convicted of a crime (larceny, false entry, inciting to riot and riot) which may demonstrate his lack of fitness merely because that crime is classified as a misdemeanor under the Connecticut code.

   440 F.Supp. at 1080. Similarly, the court in *Butts* reasoned:

   Section 365.17(5) suffers from a total lack of such narrowing criteria. As a result, the statute is both over and under inclusive: persons who clearly could serve the public interest are denied civil service jobs, while misdemeanants convicted of crimes indicating a lack of probity suffer no disqualification. In short, no consideration is given to the nature and seriousness of the crime in relation to the

must be evaluated in light of *United States v. Giles*, 640 F.2d 621 (5th Cir. 1981). In *Giles* the defendant challenged the constitutionality of a federal statute which made unlawful the receipt of firearms by an ex-felon. The defendant argued in effect that it is irrational for Congress to presume that those persons who have been convicted of a serious non-violent crime are more likely than the ordinary citizen to engage in violent crimes involving firearms in the future. The court held, however, that the statute was constitutional because this presumption is in fact very rational.

Furthermore, in *Dixon v. McMullen*, 527 F.Supp. 711 (N.D.Texas 1981) the court relied on *Giles* to hold that a state statute automatically excluding ex-felons from certification as police officers was constitutional. The court held that it was rational for the state to promote high standards of professional conduct in the police force by excluding ex-felons because persons who have committed serious crimes in the past have demonstrated a "greater *potential* for abuse" of rights and privileges. 527 F.Supp. at 722. Because of this potential for abuse, the legislature in *Dixon* was justified in drawing a line to exclude a majority of undesirable applicants, while acknowledging it might deny a minority of acceptable ones.

The Court is persuaded by the reasoning of *Giles* and *Dixon* and thus rejects the plaintiff's overbreadth argument. The Court does so recognizing that the classification is to some extent over-inclusive, however, the Equal Protection Clause does not require perfect line-drawing by legislatures. *Vance v. Bradley, supra*, 440 U.S. at 108, 99 S.Ct. at 948.

The plaintiff also argues that section 2622 is irrational and inconsistent in that ex-felons are not excluded from other sensitive occupations in Illinois. While emotionally appealing, this reasoning forgets that a legislature has a great deal of latitude in

job sought. The time elapsing since the conviction, the degree of the felon's rehabilitation, and the circumstances under which the crime was committed are similarly ignored.

making statutory classifications involving social and moral legislation. *United States v. Weatherford*, 471 F.2d 47, 51 (7th Cir. 1972). In fact, the Seventh Circuit has specifically stated that "perfect logical consistency is not essential" under the Equal Protection Clause. *United States v. Neary*, 552 F.2d 1184, 1189 (7th Cir. 1977). Under the rational basis test, a court's review is very limited. Inconsistency is usually not a relevant factor in the court's analysis. A statute does not deny equal protection because it is not all-embracing. *See Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563 (1955).

B. The plaintiff's second argument under the Equal Protection Clause is that the statute irrationally distinguishes among the class of ex-offenders. The Seventh Circuit has held that distinctions among a class of ex-offenders are irrational where an applicant for a license is barred because of his felony record but one who commits a felony while holding a license is not necessarily barred. *Miller v. Carter*, 547 F.2d 1314 (7th Cir. 1977), *aff'd by an equally divided court*, 434 U.S. 356, 98 S.Ct. 786, 54 L.Ed.2d 603 (1978). In *Miller* the plaintiff challenged an employment restriction in a Chicago ordinance which barred persons convicted of weapons crimes from obtaining a public chauffeur's (taxi) license. A person licensed at the time of the commission of the crime, however, could retain the license after conviction if a city commission exercised discretion in his favor. Accordingly, the court found that the ordinance discriminated irrationally among the class of ex-offenders, and, therefore, it violated the Equal Protection Clause.

Plaintiff maintains that the same irrational distinction is present in the statutory scheme before the Court because *Ill.Rev. Stat.*, ch. 38, § 1005–5–5(d) provides for restoration of "all license rights and privileges granted under the authority of the State" upon completion of a sentence of imprison-

381 F.Supp. at 581.

ment. The plaintiff's reliance on *Miller* in this case is in error. Chapter 38, § 1005–5–5(d) is not implicated in this situation because § 2622(1) does not confer a license. Rather, it merely defines who is eligible to be a *non-licensed* employee of a license holder. Section 1005–5–5(d) only restores "license rights." An employee of a licensed detective agency who commits a felony would not be reinstated under § 1005–5–5(d). Therefore, § 2622(1) stands alone, and on its face it applies to everyone who commits a felony. Thus, the irrational distinction between ex-felons that rendered the ordinance in *Miller* unconstitutional is not present in this case.

The plaintiff has raised five arguments under the Fourteenth Amendment to attack the constitutionality of section 2622(1). Although the Court is compelled to reject each of these arguments, it is sensitive to the weighty public-policy issues raised by the plaintiff's brief and exhibits. Perhaps it is bad policy, in light of the rate of recidivism and many handicaps already facing ex-felons, for the state to presume that ex-felons have more potential to abuse the position in a detective agency than those without a felony conviction. While it may be bad policy, the presumption is certainly not irrational and the state may legislate accordingly. Thus, these public-policy arguments are more appropriately addressed to the state legislature.

### CONCLUSIONS

The above discussion yields the following conclusions of law:

1. The irrebuttable presumption doctrine is unavailable to protect the interest of the plaintiff to work for a licensed private detective agency.

2. The state did not violate the Due Process Clause because it could rationally conclude that an ex-felon has demonstrated himself unfit for a potentially sensitive position with a detective agency.

3. The plaintiff was not denied procedural due process because he did not have a viable liberty or property right that was infringed.

4. The plaintiff was not denied equal protection because it was rational for the state to presume that ex-felons have a greater potential to abuse the rights and privileges associated with a job with a detective agency.

5. The challenged statute satisfies the Equal Protection Clause because it treats the class of ex-offenders equally.

For the above stated reasons, the plaintiff's Motion for Summary Judgment is hereby DENIED. Defendant's Motion for Summary Judgment is hereby GRANTED. The Clerk of the Court is ORDERED to enter judgment for the defendant.

IT IS SO ORDERED.