Doris F. THOMPSON and Michael L. Rivers, Plaintiffs-Appellees,

v.

William A. SCHMIDT et al., Defendants-Appellants.

Nos. 78–1599, 78–2049.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 3, 1979.

Decided June 26, 1979.

Rehearing and Rehearing En Banc Denied Sept. 20, 1979.

William G. Mundy, Deputy Atty. Gen., Indianapolis, Ind., for defendants-appellants.

Stephen Laudig, Indianapolis, Ind., for plaintiffs-appellees.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and EAST, District Judge.*

EAST, District Judge.

Appellants, the individual members of the Indiana Real Estate Commission, its executive secretary and education director appeal from the District Court's judgment entered on April 4, 1978, for the appellee Doris F. Thompson in her suit alleging that the grading procedures and methods employed by the appellants in their real estate broker's examination denied her due process of law as guaranteed by the Fourteenth Amendment of the Constitution of the United States (Appeal No. 78–1599).

Appellants also appeal the District Court's order granting Thompson's motion for attorney fees in the sum of $2,810 pursuant to 42 U.S.C. § 1988 (Appeal No. 78–2049).

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

## FACTS

### A. Examination Grading Procedures

This action was commenced by Thompson and Michael L. Rivers[1] on September 4, 1975 against the individual members of the Commission, its executive secretary, education director, and various real estate companies and their officers. Both had failed the July 8, 1975 real estate broker's examination given by the Commission. Their amended complaint filed December 18, 1975 alleged five counts. Counts one and two alleged violations of the Sherman and Clayton Antitrust Acts and the Indiana antitrust laws. Counts three and four alleged a denial of due process under the United States and Indiana Constitutions in that the regulations, methods, and practices adopted by the defendants were arbitrary and capricious and not reasonably designed to serve any lawful purpose relating to licensure. In count five, Thompson, a black female, alleged the regulations and practices of the Commission were designed and applied so as to discriminate against blacks.

The grading procedures employed by the appellants on the July 8th examination were as follows: The exam consisted of two parts. Part I had 60 true-false and 100 multiple choice questions. One point was given for each correctly answered question. Part II consisted of four sections pertaining to (1) a real estate listing, (2) an offer to purchase, (3) a buyers' closing statement, and (4) a sellers' closing statement. The first two sections had 24 questions each and the other two sections had 20 questions each. Sections one, three and four were each worth 30 points; section two, 40 points. To receive the allotted number of points for each section, all the questions in that section had to be answered correctly. If any one question within the section was incorrectly answered, no points were awarded for that section. This was the procedure followed for all four sections of Part II. In other words, it was all or nothing.

To pass the examination, the applicant had to receive 218 points out of a possible 290 points. Appellee Thompson received 215 points. Of the 628 persons taking the exam on July 8, 1975, 110 or 17% passed.

On April 20, 1976, the District Court dismissed counts one and two. On February 3, 1977, the Court granted the various co-defendant real estate companies' motions for summary judgment on counts three through five. As to the remaining defendants, a one day bench trial on counts three through five was held on April 3, 1978. The District Court held that "[t]he method of grading Part II of the Real Estate Broker's examination of July, 1975 was arbitrary and capricious and denied the plaintiffs of due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States."

### B. Attorney Fees

On April 12, 1978, appellee submitted an application to the District Court for attorney fees. The District Court entered judgment for the full amounts requested.

## ISSUES

### A. Appeal No. 78–1599

Whether the District Court erred in determining that Indiana's method of grading its July 8, 1975 real estate broker's examination constituted arbitrary and capricious state action in violation of the Fourteenth Amendment's Due Process Clause.

### B. Appeal No. 78–2049

Whether the District Court erred in its award of attorney fees.

## DISCUSSION

■ We start with the appellee's proposition that "a citizen has the right to a fair opportunity to pursue an occupation." Of this, there is little doubt. In *Hampton v. Mow Sun Wong*, 426 U.S. 88, 102 n.23, 96 S.Ct. 1895, 48 L.Ed.2d 495 (1976), in which the Court struck down a Civil Service Com-

---

1. Rivers subsequently passed the examination; the District Court, therefore, found his claim to be moot.

mission rule barring all noncitizens from employment in the federal competitive civil service, the Court cited with approval the language of *Truax v. Raich*, 239 U.S. 33, 41, 36 S.Ct. 7, 10, 60 L.Ed. 131 (1915):

> "It requires no argument to show that the right to work for a living in the common occupations of the community is of the very essence of the personal freedom and opportunity that it was the purpose of the [Fourteenth] Amendment to secure. . . ."

█ However, we recognize that a given state has a legitimate and substantial interest in prescribing reasonable, in the constitutional sense, qualifications for professions or occupations which require "special knowledge or skill and intimately [affect] the public health, morals, order, or safety, or the general welfare . . . ." *State v. Ballance*, 229 N.C. 764, 51 S.E.2d 731, 735 (1949). *See Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 460, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978). It follows, therefore, that the state may require a demonstration of competence in an examination designed to "[test] skills and knowledge which have a 'logical, apparent relationship' to those necessary" to serve as a broker.[2] *Tyler v. Vickery*, 517 F.2d 1089, 1101 (5th Cir. 1975), *cert. denied*, 426 U.S. 940, 96 S.Ct. 2660, 49 L.Ed.2d 393 (1976). As stated by this Court in *Rasulis v. Weinberger*, 502 F.2d 1006, 1010 (7th Cir. 1974): "Educational requirements and proficiency examinations are time-tested means of assuring that practitioners meet minimum standards of competence."[3] *See also Dent v. West Virginia*, 129 U.S. 114, 9 S.Ct. 231, 32 L.Ed. 623 (1889), for an early discussion of the state's broad power to set the "nature and extent of the qualifications required." *Id.* at 121–22, 9 S.Ct. at 233.

Accordingly, the Indiana Legislature has established minimum standards and requirements for licensure of real estate salespersons and brokers. The Indiana Real Estate Commission was established to carry out and enforce such standards. See IC 25–34–1–12.

In *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), the Court teaches:

> "A State cannot exclude a person from the practice of law or from any other occupation in a manner or for reasons that contravene the Due Process or Equal Protection Clause of the Fourteenth Amendment. . . . A State can require high standards of qualification, such as . . . proficiency in its law, before it admits an applicant to the bar, but any qualification must have a rational connection with the applicant's fitness or capacity to practice law. . . . Even in applying permissible standards, officers of a State cannot exclude an applicant when there is no basis for their finding that he fails to meet these standards, or when their action is invidiously discriminatory." (Citations and footnote omitted). *Id.* at 238–39, 77 S.Ct. at 756.

In *Rasulis*, this Court, in discussing federal social welfare standards, was concerned with standards promulgated for physical therapists in health care institutions. The Court stated:

> "The Due Process Clause [of the Fifth Amendment] prohibits only those classifications . . . that are patently arbitrary and totally lacking in rational justification. . . . And '. . . regulation which is reasonable in relation to its subject and is adopted in the interests of the community is due process.'" (Citations omitted). *Id.* at 1009.

Further:

> "The Due Process Clause imposes only broad limits, . . . on the exercise

---

**2.** The North Carolina Court of Appeals in *North Carolina Real Estate Licensing v. Aikens*, 31 N.C.App. 8, 228 S.E.2d 493, 496 (1976), noted two aspects of real estate brokering which permit regulation: "(1) The characteristics of trust and confidence in the relationship between broker and client, which provide opportunities for collusion to extract illicit gains and which make the bond analogous to that between attorney and client; and (2) The economic significance of the real estate business, which was similar to that of the banking industry."

**3.** Appellee does not contest the validity of the testing requirement in the abstract.

by a State of its authority to regulate its economic life, and particularly the conduct of the professions. *Ohralik v. Ohio State Bar Assn.*, 436 U.S. 447, 98 S.Ct. 1912, 56 L.Ed.2d 444 (1978); *North Dakota Pharmacy Board v. Snyder's Drug Stores, Inc.*, 414 U.S. 156, 164–167, 94 S.Ct. 407, 412–414, 38 L.Ed.2d 379 (1973); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–488, 75 S.Ct. 461, 464, 99 L.Ed. 563 (1955). *Cf. Weinberger v. Salfi*, 422 U.S. 749, 767–774, 95 S.Ct. 2457, 2467–2471, 45 L.Ed.2d 522 (1975)." *Friedman v. Rogers*, —— U.S. ——, —— n. 19, 99 S.Ct. 887, 898, 59 L.Ed.2d 100 (1979).

*Tyler* dealt with a class action on behalf of all black persons who had taken and failed the Georgia bar examination. The examination was attacked on due process and equal protection grounds. In ruling that the Georgia bar examination was constitutional, the Court stated "that a rationally supportable examination should 1) be designed for the purpose for which it is being used, and 2) utilize a cutoff score related to the quality the examination purports to measure." 517 F.2d at 1102.

Here, the District Court found, and the point is not pressed on appeal, that the questions asked in Part II of the examination bore a rational relationship to the practice of a real estate broker.[4]

As previously stated, the sole point of contention is the "all-or-nothing" procedure used to grade Part II. Appellant states that there is no middle ground in the four areas being tested in Part II; either the listing, offer, or closings are "entirely correct or [they are] simply all wrong." Appellant further states that:

"Unlike Part I of the examination which tested general knowledge of real estate law, practices, and customs, Part II of the examination is designed to test an appli-

cant's ability to effectively utilize and understand the basic documents of his profession."

Each of the four areas being tested in Part II, taken separately, deals with only one type of real estate document. An applicant's understanding of particular documents and his ability to work with them are being tested. Each section in Part II contains a set of facts which comprises a single problem to be solved. The applicant is required to answer several related questions concerning the given set of facts in order to resolve the total problem. An applicant need not achieve 100% on all four sections to pass. Depending, of course, on the score obtained in Part I, an applicant could miss a question or questions in one or two of the four sections and still receive a passing score; there are numerous combinations possible. Despite the fact that the appellee might have had a cumulative total greater than someone who passed the examination, the Commission has determined that the questions are not of equal weight or significance and, therefore, the number of questions correctly answered, standing alone, is not determinative.[5]

Although the principles discussed in *Martin-Trigona v. Underwood*, 529 F.2d 33 (7th Cir. 1975), were applied to admission to a state bar, they are nonetheless relevant in the present context. We there stated:

"[A]dmission to practice law in a state and before its courts is primarily a matter of state concern, *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957), and the determination of which individuals have the requisite knowledge and skill to practice may properly be committed to a body such as the Illinois Board of Law Examiners. *Douglas v. Noble*, 261 U.S. 165, 43 S.Ct. 303, 67 L.Ed. 590 (1923). It follows from

---

4. In evaluating the questions asked in Part II, as contrasted with those asked in Part I, the District Court stated that it felt the questions were all quite easy. The Court even noted that all of the answers to the questions in Part II were contained in the factual summary preceding each section. While we do not find it necessary to pass on this point, we note, how-

ever, that the relative ease of the questions adds credence to the rationality of the "all-or-nothing" grading procedure.

5. *See, generally*, 30 A.L.R. Fed. 934, 946–47, State Bar Examination Procedures, § 5[b] Arbitrariness of Passing Grade.

**310**

this proposition that a federal court is not justified in interfering with a state's determination in such a matter unless there is proof that an applicant has been denied admission for constitutionally impermissible reasons. *Whitfield v. Illinois Board of Law Examiners*, 504 F.2d 474, 477 (7th Cir. 1974); *Schware, supra*, 353 U.S. at 238–240, 77 S.Ct. 752; *id.* at 248–249, 77 S.Ct. 752 (Frankfurter, J., concurring); *cf. Theard v. United States*, 354 U.S. 278, 281, 77 S.Ct. 1274, 1 L.Ed.2d 1342 (1957). In this regard, it has been held that the only constitutionally permissible state objective in licensing attorneys is the assurance that the applicant is capable and fit to practice law. *Keenan v. Board of Law Examiners of State of N. C.*, 317 F.Supp. 1350, 1359 (E.D.N.C.1970). Accordingly, in the present case we decline to invade the province of, or impinge upon the procedures of the State of Illinois in its determination as to the qualifications of bar applicants unless, of course, we are persuaded that there has been a constitutional deprivation involved." *Id.* at 35.

█ This Court cannot substitute its judgment for that of the Commission regarding the type of grading procedures to be followed unless the procedures are so arbitrary as to constitute a violation of due process. The Commission must be recognized as having some expertise in this field and in its choice of the type of grading method to utilize. While this Court does not feel that the "all-or-nothing" grading procedure used is the most effective indicator or fair and desirable method of evaluating an applicant's fitness for practice as a broker, we nevertheless cannot interfere with the Commission's determination.

Moreover, the observations of the courts in *Tyler* and *Richardson v. McFadden*, 540 F.2d 744 (4th Cir. 1976), *aff'd en banc*, 563 F.2d 1130 (4th Cir. 1977), *cert. denied*, 435 U.S. 968, 98 S.Ct. 1606, 56 L.Ed.2d 59 (1978), where the appellants alleged that the exam-

inations were racially discriminatory, or that in *Whitfield*, where the applicant challenged the Illinois bar examination as it applied to him individually after failing five times, are even more forceful in the present context where no such allegations could possibly be sustained. Nor are there any allegations of a biased or prejudicial evaluation of the examination by the graders. Furthermore, the appellee is not foreclosed from another opportunity to take the examination.

As stated by the United States Supreme Court in *Dent*, 129 U.S. at 122, 9 S.Ct. at 233:

"The nature and extent of the qualifications required must depend primarily upon the judgment of the state as to their necessity. If they are appropriate to the calling or profession, and attainable by reasonable study or application, no objection to their validity can be raised because of their stringency or difficulty."

We conclude that the grading procedure utilized in Part II of the July 8, 1975 Indiana real estate broker's examination was not constitutionally invalid.[6] It, therefore, follows that we do not reach the award of attorney fees, Issue B.

We hold that the District Court erred in its finding and conclusion that "[t]he method of grading Part II of the Real Estate Broker's Examination of July, 1975 was arbitrary and capricious and denied the plaintiffs of due process of law, contrary to the Fourteenth Amendment of the Constitution of the United States." The judgment entered in favor of Thompson on April 4, 1978, and the judgment allowing attorney fees entered on June 29, 1978, are each reversed and the cause is remanded to the District Court with instructions to dismiss the plaintiff's action.

Reversed and Remanded.

---

**6.** Appellee points out that a markedly lower percentage pass rate existed for the examination periods in late 1974 and early 1975, which includes the examination taken by Thompson, than for examinations taken both before and after that period. However, no evidence was offered to show the use of any different grading procedures than those utilized here and we will not speculate as to the reasons behind the fluctuation.