ROBINSON SANTIAGO GIRONA, y OTROS, demandantes-apelados; dos recurrentes, *v.* TRIBUNAL EXAMINADOR DE MÉDICOS y OTROS, demandados-apelantes; recurridos.

*Números:* CE-86-599    *Resueltos:* 5 de diciembre de 1986
Ref. RE-86-442

2

*Rafael Ortiz Carrión, Procurador General* y *Annabelle Rodríguez, Procuradora General Auxiliar,* abogados del Tribunal Examinador de Médicos; *Telesforo Rosa Resto,* abogado de los apelados.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

El Procurador General recurre ante nos de una decisión del Tribunal Superior que invalida los resultados de la reválida de marzo de 1986 suministrada por el Tribunal Examinador de Médicos y fija una nueva nota de pase. Se nos plantea en este recurso si el procedimiento utilizado por esa junta examinadora para determinar la nota de pase del examen de reválida cumple con la cláusula del debido procedimiento de ley de nuestra Constitución. Por otro lado, el Estado también cuestiona la puntuación mínima establecida por el tribunal de instancia. Resolvemos modificar la sentencia apelada, sólo a los fines de dejar sin efecto la puntuación mínima formulada por el tribunal de instancia.

I

Los demandantes, doctores en medicina, no aprobaron la segunda parte del examen de reválida ofrecido por el Tribunal Examinador de Médicos, en marzo de 1986, equivalente al examen de ciencias clínicas. Luego de obtener la revisión del examen por parte del Tribunal Examinador, presentaron ante el Tribunal Superior acción de *injunction, mandamus y daños y perjuicios.* Alegaron que dicha junta determinó de forma arbitraria y caprichosa que la nota de pase sería 200 aciertos de un total de 300 preguntas, violándoles así su debido proceso de ley procesal y sustantivo y la igual protección de las leyes.

El tribunal de instancia resolvió que los procedimientos seguidos por el Tribunal Examinador son constitucionalmente impermisibles por ser caprichosos y arbitrarios y estableció una puntuación mínima de 176 contestaciones correctas para

aprobar el examen. El Tribunal ordenó a la junta examinadora que, a aquellos demandantes que hubieran obtenido más de 176 aciertos les notificara que habían aprobado la segunda parte de la reválida y que por lo tanto les permitiera tomar la tercera parte.

Examinado el recurso de apelación presentado por los demandados, así como la comparecencia de los apelados, concedimos tiempo a las partes para que ilustraran a esta curia sobre la procedencia de modificar la sentencia del Tribunal Superior, sólo en cuanto a dejar sin efecto la nota de pase establecida por ese foro y devolver el caso al Tribunal Examinador de Médicos para que éste reevalúe su decisión y establezca una puntuación mínima basada en criterios estadísticos confiables. En auxilio de nuestra jurisdicción ordenamos la paralización de los procedimientos en instancia.

El Procurador General, en representación del Tribunal Examinador, compareció allanándose a la solución intimada en la resolución del 30 de septiembre de 1986. Los aspirantes apoyaron la decisión del Tribunal a quo y a su vez dos de ellos recurrieron cuestionando la nota de pase fijada por el magistrado y solicitando que fijáramos una puntuación mínima más baja.

II

El Tribunal Examinador de Médicos, creado mediante la Ley Núm. 22 de 22 de abril de 1931, [1] tiene a su cargo reglamentar la práctica de la medicina en la isla. Dicha ley autorizó al Tribunal Examinador a ofrecer exámenes de reválida por lo menos dos veces al año, de acuerdo con las normas que a esos fines adopte. 20 L.P.R.A. sec. 40.

---

[1] La Ley Núm. 1 de 25 de junio de 1986, enmendó varias secciones de dicha ley a los fines de revisar y reorientar las funciones del Tribunal Examinador. El Tribunal está compuesto por nueve médicos, nombrados por el Gobernador con el consejo y consentimiento del Senado. 20 L.P.R.A. sec. 31.

En su Reglamento de 6 de septiembre de 1984, dicha junta examinadora, define el examen de reválida como una "prueba calificadora que mide el nivel de competencia cognoscitiva, aptitud y destrezas para ejercer la profesión médica en Puerto. Rico. El mismo consta de tres partes: Primera Parte—Ciencias Básicas de la Medicina; Segunda Parte—Ciencias Clínicas, y Tercera Parte—Examen Práctico". Reglamento del Tribunal Examinador de Médicos de Puerto Rico, Departamento de Salud, Cap. I, Art. 2.5. El Reglamento, además, establece que "[e]l mínimo para aprobar cada parte es 75 a base del sistema que determine el Tribunal Examinador de Médicos para establecer la nota de pase de cada examen". Reglamento, *op. cit.*, Cap. I, Art. 4.5.

En *Román* v. *Trib. Exam. de Médicos*, 116 D.P.R. 71, 79 (1985), reiteramos "el reconocimiento de los tribunales sobre la extensa discreción de los estados y sus juntas examinadoras en la fijación de normas y procedimientos a regir los procesos de admisión o certificación de personas al ejercicio de profesiones u oficios". Si bien reconocimos que la facultad para reglamentar la admisión a las profesiones no se cuestiona, advertimos que "el Estado viene obligado a trazar objetivos racionales al cumplir con dicha función".

En esa ocasión se cuestionó que el procedimiento de corrección de los exámenes y las normas sobre el acceso tanto a las pruebas como a las guías de corrección, violaban el debido proceso de ley. Luego de determinar que existía un interés propietario en dicho examen, expresamos que "procede . . . *evaluar el 'tipo'* de procedimiento requerido", considerando "los siguientes factores: (a) el interés privado que pueda resultar afectado por la actuación oficial; (b) el riesgo de una privación errónea debido al procedimiento utilizado; y (c) el interés del estado, incluyendo su función envuelta y las cargas administrativas y fiscales que conllevaría requerir garantías

adicionales o sustitutas". *Román* v. *Trib. Exam. de Médicos, supra,* págs. 80–81.

■ Al reglamentar el acceso a una profesión el Estado no puede excluir aspirantes de forma, o por motivos que violenten el debido proceso de ley y la igual protección de las leyes. El Estado puede establecer unos requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otra calificación que esté racionalmente relacionada con el objetivo de garantizar que los admitidos posean la competencia para practicar la profesión en forma adecuada. *Schware* v. *Board of Bar Examiners,* 353 U.S. 232, 238–239 (1957) ; T. M. Massaro, T. L. O'Brien, *Constitutional Limitations on State-Imposed Continuing Competency Requirements for Licensed Professionals,* 25 Wm. & Mary L. Rev. 253, 266–267 (1983). Cuando el Estado utiliza el mecanismo de exámenes([2]) para admitir aspirantes a una profesión, el examen debe cumplir con dos criterios para satisfacer el requisito de racionalidad: (1) que sea diseñado con el propósito para el cual se va a utilizar, y (2) que utilice una nota de pase que esté relacionada con la calidad que el examen pretende medir. *Thompson* v. *Schmidt,* 601 F.2d 305, 309 (7mo Cir. 1979) ; *Tyler* v. *Vickery,* 517 F.2d 1089, 1102 (5to Cir. 1975). La nota de pase debe tener un nexo racional con los conocimientos mínimos que el Estado haya establecido para ejercer la profesión. *United States* v. *State of North Carolina,* 400 F. Supp. 343, 349 (E.D.N.C. 1975) ; *Richardson* v. *McFadden,* 540 F.2d 744, 749 (4to Cir. 1976). Resulta impermisible que el Estado establezca una puntuación mínima estadísticamente calculada para producir un determinado porcentaje de

---

([2]) Para efectos del análisis que esbozamos a continuación, un examen puede consistir de preguntas de selección múltiple, de discusión, una prueba oral o de ejecución práctica o una combinación de éstas o cualquier otra que resulte apropiada para medir las destrezas necesarias para obtener una licencia, a fin de ejercer la profesión en cuestión.

aprobados y reprobados, sin correlación alguna con la competencia de los examinados. *United States* v. *State of North Carolina*, supra, pág. 351.

■ Existen diversos métodos reconocidos para fijar científicamente una nota de pase en una reválida de una profesión altamente reglamentada por el Estado. Entre los métodos sicométricos aceptados por su valor científico y utilizados por diversas juntas examinadoras se destacan entre otros el sistema de Angoff, el de Nedelsky, el que utiliza grupos contrastantes y el que consiste en adoptar el sistema de otra jurisdicción que ofrezca un examen análogo. Véanse: S. P. Klein, *On Testing, Establishing Pass/Fail Standards*, 55(3) The Bar Examiner 18 (1986); Shepard, *Standard Setting Issues and Methods*, 4 Applied Psychological Measurement 447 (1980); R. L. Thorndike, *Educational Measurement*, Washington, D.C., 1971, American Council on Education, American Psychological Association, American Educational Research Association & National Council on Measurement in Education; *Standards for Educational and Psychological Tests*, Washington, D.C., 1974, American Psychological Association; R. Jaeger & C. Title, *Minimum Competency Achievement Testing*, Berkeley, CA, McCutchan, 1979; M. A. Bunda & J. R. Sanders, *Practices and Problems in Competency-Based Measurements*, Washington, D.C., National Council on Measurements in Education, 1979. Sin embargo, se reconoce que el método aplicable variará dependiendo del tipo y objetivos de los exámenes en cuestión. Precisamente, por la complejidad del asunto el Estado generalmente delega en juntas examinadoras la facultad de trazar los objetivos de reválidas de profesión. Las juntas examinadoras tienen la responsabilidad de formular el método más adecuado para asegurar la calidad de los que van a tener esa licencia exclusiva concedida por el Estado. Independientemente de cuál es el procedimiento seleccionado, el mismo debe ser confiable, tanto desde el punto de

vista científico como de su razonabilidad y aplicabilidad a la profesión reglamentada. También debe haber continuidad en la metodología utilizada y se debe proveer un mecanismo para ajustes periódicos de medición y validación de la prueba.

■ Por la naturaleza de la responsabilidad delegada a esas entidades colegiadas, los tribunales deben revisar con especial cuidado, aunque con la debida deferencia, aquellas actuaciones de tribunales examinadores que estén relacionadas con la admisión a una profesión, particularmente en los casos en que la junta está compuesta en su mayoría por miembros de la profesión reglamentada. Nota, *Due Process Limitations on Occupational Licensing*, 59 Va. L. Rev. 1097, 1128 (1973).

Examinado el marco doctrinal aplicable a esta controversia, debemos resolver si la nota de pase establecida por el Tribunal Examinador para la reválida de marzo de 1986 cumple con estos requisitos constitucionales.

## III

En sus conclusiones de hecho, el tribunal de instancia determinó que, "al fijar la puntuación de equivalencia a 75 en la escala, el [Tribunal Examinador] no se guía por aplicación de fórmula matemática de tipo alguno para hacer la conversión correspondiente. No hay constancia alguna en las actas del [Tribunal Examinador] que tienda a indicar que el procedimiento utilizado para determinar la equivalencia a 75 tenga base racional o científica, muy especialmente en lo atinente a la fijación de 200 como puntuación necesaria para obtener el 75 de escala que de acuerdo con los mismos reglamentos que han sido adoptados por el Tribunal Examinador de Médicos es la nota de aprobación desde por lo menos 1982". *Exhibit* 1, pág. 14.

La nota de pase de la reválida de ciencias clínicas ofrecida en marzo de 1986 fue fijada mediante votación de los miembros de esa junta. Inicialmente la mayoría aprobó como

nota de pase 190 aciertos, pero al ausentarse de la reunión uno de los miembros, se reconsideró la nota y se volvió a votar, elevándose esta vez a 200. El tribunal de instancia encontró que quedó debidamente establecido que el Tribunal Examinador tomó como un factor determinante para fijar la nota de pase, el porcentaje de examinados que habrían de aprobar el examen.

Concluyó que los procedimientos seguidos por el Tribunal Examinador son constitucionalmente impermisibles por ser caprichosos y arbitrarios, violándose así a los demandantes sus derechos e intereses propietarios sobre su profesión, así como su derecho a la igual protección de las leyes al establecer una clasificación sin base racional.

En *Román* v. *Trib. Exam. de Médicos*, supra, pág. 80, expresamos que para prevalecer un ataque contra reglamentación de este tipo, "tiene que demostrarse que las normas aplicadas niegan arbitrariamente la admisión a los aspirantes por motivos desvinculados al propósito de la reglamentación", y que sólo se le requiere al Estado alguna evidencia de que las medidas son racionales.

En este caso el Tribunal Examinador no presentó evidencia alguna de que utilizara en la reválida de marzo de 1986 un sistema de validación que garantice que en efecto el número de aciertos que equivale a la nota de pase en escala tiene relación racional con el objetivo del examen. Una inspección de los autos y de la prueba documental revela que el Tribunal Examinador no empleó el método de validación que había utilizado en reválidas anteriores. Por el contrario, quedó claramente establecido que al determinar que la nota de pase para esa reválida sería 200 aciertos, dicha junta consideró primordialmente el número de aspirantes que aprobarían bajo distintas alternativas y decidió a base de este criterio arbitrario y caprichoso. Tampoco utilizó un método científicamente confiable para fijar la puntuación mínima.

■ No obstante, de ordinario los tribunales no deben sustituir su criterio por el del Tribunal Examinador de Médicos en cuanto al método que éste utilizó para establecer la nota de pase del examen de reválida. Ya en *Román v. Trib. Exam. de Médicos*, supra, pág. 85, advertimos del "serio riesgo de convertir a los tribunales en 'superjuntas' inmersas en el complicado y especializado proceso de evaluación y calificación". Siempre que una junta examinadora utilice algún método estadísticamente válido y reconocido para determinar la nota de pase en un examen de reválida, no debemos intervenir con su discreción.

De acuerdo con lo antes expuesto, confirmamos la determinación de la sala sentenciadora de que el procedimiento seguido por el Tribunal Examinador de Médicos al fijar la nota de pase en la reválida de marzo de 1986 fue arbitrario y que no cumple con las garantías del debido proceso de ley. [3] Sin embargo, el foro de instancia erró al establecer una nota de pase sustituyendo el criterio administrativo por el judicial.

Siguiendo una sana metodología adjudicativa, *procede que dictemos sentencia que modifique la decisión del Tribunal Superior y se deje sin efecto la nota de pase por éste establecida. Se devuelve el caso al Tribunal Examinador de Médicos para que establezca una puntuación mínima para la reválida de marzo de 1986, conforme con los criterios analizados en este caso.*

---

[3] En "Moción en Cumplimiento de Orden" de 15 de octubre de 1986 el Procurador General informó que el Tribunal Examinador de Médicos había contratado al Dr. Stephen P. Klein para que evaluara los resultados de la reválida sujeto del presente litigio. Posteriormente, mediante Moción Informativa, nos notificó los resultados del estudio.

Debemos recalcar que la controversia ante este foro, así como ante el tribunal de instancia, giró exclusivamente en torno a la validez de los procedimientos utilizados para establecer la nota de pase de la reválida de marzo de 1986. No estamos tomando en consideración ni pasando juicio sobre el estudio realizado por el doctor Klein ni la nota de pase por él recomendada.

El Juez Asociado Señor Rebollo López concurre sin opinión escrita. El Juez Asociado Señor Negrón García se inhibió. El Juez Asociado Señor Alonso Alonso no intervino.