LUZ IVETTE SEPULVEDA
Peticionaria-Recurrente

v.

HON. JUNTA EXAMINADORA DE ADMINISTRADORES
DE SERVICIOS DE SALUD, ETC.
Demandada-Recurrida

Núm. KLRA-97-00137

San Juan, Puerto Rico, a 19 de marzo de 1998

Panel integrado por su Presidenta, la Juez Fiol Matta,
la Juez Rodríguez de Oronoz y el Juez Gierbolini

Gilberto Gierbolini, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

Luz Ivette Sepúlveda (en adelante, Sepúlveda) solicita la revisión de la decisión de la Junta Examinadora de Administradores de Servicios de Salud (la Junta) que denegó su solicitud para tomar el examen de admisión a la práctica de esa profesión en Puerto Rico. La Resolución (en reconsideración) fue emitida el 10 de marzo de 1997. Sepúlveda instó la presente solicitud de revisión el 17 de marzo de 1997.

Tras haber requerido la comparecencia de la parte recurrida y concedido una prórroga, este

Tribunal recibió el Informe del Procurador General el 17 de junio de 1997.

Consideradas las posiciones de ambas partes a la luz del derecho aplicable, procedemos a EXPEDIR el auto y CONFIRMAR la Resolución recurrida.

## I

El 19 de julio de 1996, Sepúlveda presentó su solicitud para tomar el examen de admisión ante la Junta. Con su solicitud, Sepúlveda acompañó la documentación que acreditaba haber obtenido un grado de Bachiller en Enfermería de California State University y Maestría en Administración de Servicios de Salud en La Verne University, así como haber completado un internado en la Universidad de John Hopkins, en el estado de Maryland.

La Junta denegó la solicitud mediante Resolución del 15 de noviembre de 1996, en la que señaló que no admitía a Sepúlveda a tomar el examen porque ésta no cumplía con el requisito que el Artículo 6 de la Ley Número 31 del 30 de mayo de 1975, según enmendada, 20 L.P.R.A. Secciones 2351 *et seq*, establece en su inciso (e):

*"La Junta concederá licencia de administrador de servicios de salud a todo aspirante que cumpla con los siguientes requisitos:*

*(a) Ser mayor de edad;*

*(b) Ser residente de Puerto Rico;*

*(c) Radicar ante la Junta declaraciones juradas de dos (2) miembros de la comunidad acreditativas de la buena conducta del solicitante;*

*(d) Presentar ante la Junta un certificado médico acreditativo de que el solicitante goza de buena salud al momento de radicar su solicitud;*

*(d) Presentar ante la Junta un diploma o su equivalente, expedido por una universidad, colegio o escuela reconocida por la Junta acreditativo de haber obtenido el grado de Maestro en Administración de Hospitales o en Administración de Servicios de Salud. Disponiéndose, que en el caso de instituciones educativas en Puerto Rico, los programas deberán estar acreditados por el Consejo de Educación Superior de Puerto Rico (C.E.S). y si radican en Estados Unidos por la entidad nacional Accrediting Commission on Educatcion for Administration;*

*(f) Aprobar un examen ofrecido por la Junta;*

*(g) Practicar por un período de un año como administrador de servicios de salud en el servicio público, luego de haber cumplido con los requisitos establecidos en los incisos (a) a (f) de esta sección y conforme a lo dispuesto en las secs. 71 a 71 b de este título,"*

La Resolución advertía a Sepúlveda de su derecho a solicitar reconsideración, vista y revisión judicial.

Sepúlveda presentó su moción de reconsideración el 5 de diciembre de 1996. En ésta alegó que tenía un derecho propietario a tomar la reválida, que la delegación de la acreditación a una organización no gubernamental era indebida y excesivamente abarcadora, que la ley establece una clasificación sospechosa; y que a las universidades de la Isla no le era requerida la acreditación por la Accrediting Commission.

Luego, en una moción de suplemento a la Reconsideración, Sepúlveda añadió que la ley viola las cláusulas de privilegios e inmunidades y comercio interestatal de la Constitución de Estados Unidos.

La Junta celebró vistas los días 27 de diciembre de 1996 y 24 de enero de 1997.

La Junta reiteró su posición al declarar No Ha Lugar a la moción de reconsideración el 10 de

marzo de 1997. La Resolución, notificada al día siguiente, establece que la Ley requiere en su Artículo 6 que los programas de Maestría en Administración de Servicios de Salud de universidades radicadas en Estados Unidos estén acreditados por la Accrediting Commission; que la Universidad de La Verne, aunque está acreditada por la organización regional *"Western Association of School and Colleges"*, no ha sido acreditada por la entidad nacional que requiere la Ley y, por ende, no puede ser aceptada la solicitud de Sepúlveda de licencia mediante examen.

Ante nos, Sepúlveda impugna la validez constitucional de la ley que establece el requisito de acreditación, por los mismos argumentos expresados en la moción de reconsideración. A saber, indebida delegación en una entidad sobre la cual el Estado Libre Asociado no tiene poder de supervisión, derecho propietario a tomar el examen, violación a la igual protección de las leyes, por clasificación sospechosa, ya que la ley requiere a los programas de las universidades de Puerto Rico acreditación del Consejo de Educación Superior (CES) y no de la Accrediting Commission, como a las universidades de los Estados Unidos.

Por su parte, la Junta, representada por el Procurador General, sostiene en revisión que la delegación de los criterios para evaluar los programas de universidades ubicadas en Estados Unidos es legal porque la Accrediting Commission está reconocida por el Departamento de Educación Federal y sus integrantes son profesionales altamente cualificados. Además, trae a colación el hecho de que la Universidad de La Verne está en el proceso de obtener la acreditación y una vez la obtenga Sepúlveda podría solicitar nuevamente la admisión al examen. En lo que respecta a las alegaciones sobre violación a la igual protección de las leyes, el Procurador contesta que la cláusula constitucional lo que prohibe es el trato desigual injustificado. Siempre y cuando exista una situación de hechos que justifique la clasificación, una relación racional entre la misma y el interés que el Estado persigue con la legislación, será válida. Por último, apunta hacia la norma de deferencia hacia las determinaciones administrativas en ausencia de un abuso de discreción.

## II

El derecho a trabajar en una de las profesiones u oficios disponibles en una comunidad, según el Tribunal Supremo de los Estados Unidos, es una de las libertades personales protegidas por la Constitución, *Examining Board v. Flores*, 426 US 572, 604 (1976); *Truax v. Raich*, 239 US 33, 41 (1915); *Amy v. Adm. Deporte Hípico*, 116 D.P.R. 414 (1985). Es por eso que al reglamentar el acceso a una profesión, el Estado no puede excluir aspirantes de forma o por motivos que violenten el debido proceso de ley y la igual protección de las leyes, *Santiago v. Tribunal Examinador de Médicos*, 118 D.P.R. 1, 6 (1986).

Ello, sin embargo, no significa que exista un derecho absoluto a ejercer una profesión. *"En nuestra democracia... '[t]oda persona tiene derecho a ejercer la medicina, la abogacía o cualquier profesión o negocio que crea conveniente pero no como un derecho absoluto sino como una mera licencia subordinada a los requisitos y condiciones que razonablemente imponga la legislatura en el ejercicio del poder regulador (police power) que tiene para beneficio de la comunidad"*. *Pérez v. Junta Dental*, 116 D.P.R. 218, 233 (1985).

Y es que *"en el ejercicio de su poder de reglamentación en el interés público, el Estado puede adoptar medidas para proteger la salud, la moral y el bienestar general de la comunidad, sin que las restricciones que surjan de tales medidas sean contrarias al concepto del debido procedimiento de ley,"* *Vélez v. Secretario de Justicia*, 115 D.P.R. 533, 540 (1984) citando a *E.L.A. v. Márquez*, 93 D.P.R. 393, 402 (1966).

En el uso de esa *"autoridad inherente"* el Estado tiene la facultad, ya indiscutible, para reglamentar las profesiones, *Román v. Tribunal Examinador de Médicos*, 116 D.P.R. 71, 77 (1985). Con ese fin, los tribunales han reconocido la *"extensa discreción de los estados y sus juntas examinadoras en la fijación de las normas y procedimientos a regir los procesos de admisión o certificación de personas al ejercicio de profesiones u oficios,"* *Román v. Tribunal Examinador de Médicos*, supra, página 79 (1985). En el ejercicio de esa discreción, el Estado *"puede prohibir la práctica de una profesión, a menos que primero se obtenga una licencia, permiso o certificado de alguna entidad u oficial examinador"*, *Colegio de Ingenieros v. A.A.A.*, **92 J.T.S. 137**, página 10019.

El fin que persigue este tipo de legislación es establecer unos requisitos de conocimientos mínimos, capacidad, destreza, entereza moral o cualquier otra calificación que esté racionalmente relacionada con el objetivo de garantizar que los admitidos posean la competencia para practicar la profesión en forma adecuada, *Santiago v. Tribunal Examinador de Médicos, supra.*

En consecuencia, aquella persona que impugna la validez de tales requisitos tendrá que cumplir con el estándar que señala el Tribunal Supremo en *Román v. Tribunal Examinador de Médicos, supra,* a la página 80:

*"...para prevalecer un ataque contra las reglas envueltas tiene que demostrarse que las normas aplicadas niegan arbitrariamente la admisión a los aspirantes por motivos desvinculados al propósito de la reglamentación. (Cita omitida). El grado de interés público es tal que sólo se requiere "alguna evidencia"* de que las medidas son racionales, y, por ende, válidas.

Los propósitos legislativos al establecer la reglamentación de la profesión de Administrador de Servicios de Salud no son otros que ofrecer a la población un servicio depurado y libre de riesgos. Así, queda establecido en la Exposición de Motivos de la Ley 31, *supra,* a los efectos que para garantizar la competencia de aquellos que estarán a cargo de dirigir las instituciones dedicadas a ofrecer servicios de salud, éstos deberán poseer una preparación académica especializada, adecuada a su responsabilidad administrativa.

Sepúlveda alega que la Ley 31, *supra,* establece una delegación indebida de poder al requerir que los programas de las universidades de los Estados Unidos estén acreditados por una entidad privada como la Accrediting Commission on Education for Health Services Administration sobre la cual el ELA no tiene *"poder de supervisión".*

*"En primer lugar, existe consenso en que la doctrina de la delegación de poderes está en una etapa donde resulta casi infructuoso y estéril cuestionar la validez de las leyes habilitadoras de los organismos administrativos por el fundamento de una indebida delegación,"* Fernández Quiñones, Demetrio. *Derecho Administrativo,* Ed. Forum (1993) página 77. La jurisprudencia sobre ese particular ha establecido que la validez del estatuto orgánico se presume y que la delegación de poderes puede ser abarcadora, siempre y cuando existan unos criterios generales sobre cómo ejercer el poder delegado. Véase, *López Salas v. Junta de Planificación,* 80 D.P.R. 646 (1958); *Hilton Hotels v. Junta de Salario,* 74 D.P.R. 670 (1953); *Luce & Co., v. Junta de Salario,* 62 D.P.R. 452 (1944).

Cabe señalar, en segundo lugar, que el poder de regular la práctica de administración de servicios de salud fue delegado a la Junta Examinadora y no a la Accrediting Commission. La acreditación de esa entidad es sólo uno de los requisitos para que la Junta evalúe al candidato. En manos de la Junta está finalmente expedir o no la licencia. El aval de la referida entidad nacional es un instrumento valioso para asegurar una uniformidad y requisitos mínimos en la preparación de los aspirantes graduados de universidades ubicadas en Estados Unidos. A pesar de que en Puerto Rico contamos con un organismo dedicado a licenciar las instituciones de educación superior, CES no cuenta con la facilidad ni la facultad en ley para evaluar los programas de universidades fuera de esta jurisdicción. Véase, Ley Número 17 de 16 de junio de 1993, 18 L.P.R.A. Secciones 852 *et seq.*

El exigir que los programas de Maestría en Administración de Servicios de Salud de aquellas universidades que el CES no supervisa estén acreditadas por una organización profesional altamente calificada y que además, está reconocida por el Departamento de Educación Federal, es una medida razonable. Sepúlveda no ha demostrado, conforme lo exige la norma de *Román v. Tribunal Examinador de Médicos, supra,* que este requisito vinculado directamente al propósito de la reglamentación, niegue arbitrariamente la admisión a los aspirantes graduados de universidades de otros estados.

Además, el recurso de utilizar los criterios desarrollados por una entidad no gubernamental con experiencia en una disciplina particular no es extraño en nuestro ordenamiento. Véase, por ejemplo, el caso de los farmacéuticos, 20 L.P.R.A. Sección 386 (2) y abogados, 4 L.P.R.A. Sección 721 (3), entre otros.

31.

En su tercer señalamiento de error, Sepúlveda argumenta que el referido requisito de acreditación viola las cláusulas de igual protección de las leyes de las Constituciones de Puerto Rico y Estados Unidos.

Como es sabido, esta protección constitucional entra en juego cuando una legislación o actuación estatal crea clasificaciones entre grupos y discrimina a unos frente a otros. Sin embargo, el Tribunal Supremo ha señalado que *"no toda discriminación viola este precepto, ya que las normas que nutren este principio no exigen un trato igual para todos los ciudadanos, aunque sí prohíben [sic] un tratamiento desigual injustificado,"* *Berberena v. Echegoven,* **91 J.T.S. 65,** página 8800; *Zachry Int'l. v. Tribunal Superior,* 104 D.P.R. 267, 277 (1975) y *Mercado Vega v. U.P.R.,* **91 J.T.S. 41,** página 8549. Ello es así porque la Constitución no impide que las leyes dispongan situaciones distintas cuando el discrimen no es arbitrario ni responde a un propósito de hostilidad contra determinado grupo, *De Paz Lisk v. Aponte,* 124 D.P.R. 472, 487 (1989).

La igual protección de las leyes no implica la exclusión de cualquier diferenciación entre las personas por su condición si tal diferenciación tiene una justificación objetiva, *Calo v. Cartagena,* **91 J.T.S. 78,** página 8954. En otras palabras, *"[l]a desigualdad que infringe la Constitución es aquella que refleja una preferencia basada en prejuicio, no la que descansa en el interés público,"* *Vda. de Miranda v. Secretario de Hacienda,* 114 D.P.R. 11, 14 (1983).

En el caso de autos, como ya hemos discutido, el Estado tiene una justificación objetiva para establecer que los programas de Maestría en Administración de Servicios de Salud de universidades de otros estados deberán estar acreditados por una entidad distinta al CES. ■

El requisito de acreditación por la Accrediting Commission sólo persigue asegurar que los aspirantes que provienen de universidades que no están bajo la supervisión del CES cumplan con unos requisitos mínimos uniformes de preparación académica. No consideramos, ni ha demostrado la recurrente que el mismo esté basado en un propósito hostil contra determinado grupo. Sólo con la más explícita demostración de que una clasificación es un discrimen hostil y opresivo en contra de ciertas personas o clases puede desvirtuarse la presunción de constitucionalidad que acompaña a un estatuto, *Miranda v. Secretario,* 77 D.P.R. 171, 181. Véase, además, *P.S.P. v. Romero Barceló,* 110 D.P.R. 248, 260 (1980).

No entraremos en la discusión del cuarto señalamiento de error por ser éste claramente inmeritorio.

### III
Por los fundamentos anteriormente expresados, este Tribunal EXPIDE el auto y CONFIRMA la Resolución recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

### ESCOLIO 98 DTA 128

**1.** El programa de Maestría en Administración de Servicios de Salud de la Universidad de Puerto Rico, Recinto de Ciencias Médicas, además de tener la acreditación del CES, fue acreditado por la Accrediting Commission on Education for Health Services Administration. Véase, Apéndice, página 48.